**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY ENRIQUEZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NABRIVA THERAPEUTICS PLC, TED SCHROEDER, GARY SENDER, and JENNIFER SCHRANZ, <br><br> Defendants. | **Case No. 1:19-cv-04183-VM** <br><br> CLASS ACTION <br><br> **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT .........................................................................................1

II.     NATURE OF THE ACTION .........................................................................................2

III.    THE SETTLEMENT .........................................................................................3

IV.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................4

      A.     The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and *Grinnell* .........................................................................................5

            1.     The Settlement Class Was Well-Represented by Plaintiff and Co-Lead Counsel .........................................................................................6

            2.     The Settlement is the Result of Good Faith, Arm's Length Negotiations .........................................................................................8

            3.     The Settlement Is an Excellent Result for the Settlement Class .................8

                a. The costs, risks and delay of trial and appeal support approval ..................9

                b. Other 23(e)(2)(C) factors support approval ................................................11

            4.     The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other ...............................................................12

      B.     The Remaining *Grinnell* Factors Support Approval.............................................13

V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED...............................................15

      A.     The Settlement Class Satisfies the Requirements of Rule 23(a)............................15

            1.     Numerosity............................................................................................15

            2.     Commonality.........................................................................................16

            3.     Typicality .............................................................................................17

            4.     Adequacy ..............................................................................................18

      B.     The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......................19

            1.     Common Legal and Factual Questions Predominate.................................19

            2.     A Class Action Is Superior to Other Methods of Adjudication................20

**Page**

C.      Co-Lead Counsel Should be Appointed as Class Counsel ....................................20

VI.    THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY
       APPROVED ..............................................................................................................21

VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD
       OF NOTICE TO THE SETTLEMENT CLASS ...............................................................21

VIII.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................22

IX.    CONCLUSION...........................................................................................................23

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................19, 20

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)..................................................................................................18

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ....................................................................................10

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    955 F.3d 254, No. 18-3667,
    2020 U.S. App. LEXIS 10817 (2d Cir. Apr. 7, 2020) ...........................................10

*Burns v. Falconstor Software*,
    No. 10 CV 4572 (ERK),
    2014 U.S. Dist. LEXIS 203061 (E.D.N.Y. Apr. 10, 2014) .................................9, 14

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*
    *Managed Care, LLC*,
    504 F.3d 229 (2d Cir. 2007)........................................................................................17

*Christine Asia Co. v. Jack Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA),
    2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ...........................6, 12, 21

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)..........................................................................................15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)............................................................................................8

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)........................................................................................15

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................................................5, 6

*Frontier Ins. Grp., Inc. Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997)..................................................................................16

**Page**

*Gauquie v. Albany Molecular Research*,
No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017)...........................................................12

*Hayes v. Harmony Gold Mining Co.*,
No. 08 Civ. 03653 (BSJ) (MHD),
2011 U.S. Dist. LEXIS 138543 (S.D.N.Y. Dec. 2, 2011) ........................................................12

*In re Adv. Battery Tech. Secs. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ..............................................................................................14

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),

*aff'd*, 818 F.2d 145 (2d Cir. 1987) ......................................................................................8, 14

*In re Am. Int'l Grp.*,
689 F.3d 229 (2d Cir. 2012).................................................................................................4, 19

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................................10

*In re BioScrip, Inc. Sec. Litig.*,
273 F. Supp. 3d 474 (S.D.N.Y. 2017).......................................................................................12

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB),
2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13, 2011)..........................................................9

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) .........................................................................................4, 13

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)......................................................................................................18

*In re Giant Interactive Grp., Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................................9

*In re Gila Satellite Networks, Ltd.*,
2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007).......................................................13

*In re Globalstar Sec. Litig.*,
2004 U.S. Dist. LEXIS 24164 (S.D.N.Y. Dec. 1, 2004) ....................................................16, 17

**Page**

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................................4, 15

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) .....................................................................................4, 15

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ...............................................17, 19

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................................13

*In re Payment Card Interchange Fee & Merch. Antitr. Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ..........................................................................................6

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) .........................................................................................16

*In re Platinum & Palladium Commodities Litig.*,
2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ..........................................................6

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .......................................................................................7, 18

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) .......................................................................................15

*In re Take Two Interactive Secs. Litig.*,
2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010).....................................................21

*In re Top Tankers, Inc. Sec. Litig.*,
2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) .........................................................9

*In re Twinlab Corp. Sec. Litig.*,
187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..................................................................................17

*In re Veeco Instruments, Inc., Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) .......................................................................................19

**Page**

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................................16

*Kalnit v. Eichler*,
    99 F. Supp. 2d 327 (S.D.N.Y. 2000)..................................................................................10

*Melito v. Experian Mktg. Solutions, Inc.*,
    923 F.3d 85 (2d Cir. 2019)................................................................................................21

*Pearlman v. Cablevision Sys. Corp.*,
    2019 U.S. Dist. LEXIS 142222 (E.D.N.Y. Aug. 20, 2019)...............................................12

*P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*,
    2018 U.S. Dist. LEXIS 20824
    (S.D.N.Y. Feb. 1, 2018) .....................................................................................................8

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)..............................................................................................19

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................................10

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010).................................................................................................19

*Stefaniak v. HSBC Bank USA*,
    2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) ................................................12

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)..............................................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...............................................................................................4, 7

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    2015 U.S. Dist. LEXIS 73276, (E.D.N.Y. Apr. 17, 2015),
    *adopted by* 2015 U.S. Dist. LEXIS 73025 (E.D.N.Y. June 5, 2015).......................................5

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).................................................................................................15

**Page**

*Wilson v. LSB Indus.*,
    2018 U.S. Dist. LEXIS 138832 (S.D.N.Y. Aug. 13, 2018) .......................................................16

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u4(a)(7) ................................................................................................................................21

Federal Rule of Civil Procedure
    Rule 23(a)(1) .............................................................................................................................15
    Rule 23(a)(2) .............................................................................................................................16
    Rule 23(c)(1)(C)........................................................................................................................10
    Rule 23(c)(3) .............................................................................................................................21
    Rule 23(e)(1) ...............................................................................................................................5
    Rule 23(e)(2)........................................................................................................................4, 5, 6
    Rule 23(e)(2)(B)..........................................................................................................................8
    Rule 23(e)(2)(C)......................................................................................................................8, 11
    Rule 23(f) ..................................................................................................................................10
    Rule 23(g) ..................................................................................................................................20

## I.    PRELIMINARY STATEMENT

Lead Plaintiff Jonathan Schaeffer ("Plaintiff") respectfully submits this memorandum of law in support of his unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of this Action (the "Preliminary Approval Order"). The Settlement provides for a $3 million cash payment to the Settlement Class in consideration for resolving all claims alleged in this Action against all Defendants.[1] The Settlement is the result of Plaintiff's and his Co-Lead Counsel's vigorous investigation and litigation efforts and extensive arm's-length negotiations before an experienced mediator. The Preliminary Approval Order, among other things, will: (1) preliminarily approve the proposed Settlement as set forth in the Stipulation of Settlement dated December 7, 2020 (the "Stipulation"); (2) certify a Settlement Class for purposes of effectuating this Settlement; (3) approve the form and plan of notice to the Settlement Class; and (4) schedule a final approval hearing at which this Court will, among other things, make a final determination as to whether the Settlement is fair, reasonable, and adequate.

Preliminary approval is warranted where, as here, the Settlement is within the range of what may be found to be fair, reasonable, and adequate, so that notice of the Settlement can be given to all Class Members and a hearing scheduled to consider final approval of the Settlement. As provided herein, the proposed Settlement is the product of informed, good faith, arm's-length negotiations between experienced counsel. After assessing the merits of the case as well as Defendants' potential defenses, the risks and expenses in continuing litigation through trial, and the significant recovery achieved by the Settlement, Plaintiff and Co-Lead Counsel believe that

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement. Except where otherwise indicated, paragraph references in the form "¶__" are to the numbered paragraphs of the Consolidated Second Amended Class Action Complaint (the "SAC"), ECF No. 44.

the Settlement provides a favorable recovery and is in the best interests of the Class.

## II.    NATURE OF THE ACTION

On May 8, 2019, an initial complaint was filed in this Action. ECF No. 1. On May 22, 2019, a second initial complaint was filed in *Manna v. Nabriva Therapeutics Plc et al.*, 19-cv-4713-VM (S.D.N.Y). On May 24, 2019, the Court consolidated the latter case with this Action. ECF No. 6. On July 22, 2019, the Court entered an Order appointing Plaintiff to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and approved Plaintiff's selection of Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer" and collectively "Co-Lead Counsel") to serve as Co-Lead Counsel.

On September 23, 2019, Plaintiff filed his Consolidated Corrected Amended Class Action Complaint (the "AC"). On October 21, 2019, in accordance with the Court's individual practices, Defendants sent Plaintiff a letter outlining their views on why the AC should be dismissed pursuant to Rule 12(b)(6). ECF No. 37. On November 11, 2019, Plaintiff responded by letter arguing that the AC stated actionable claims for each statement challenged therein. ECF No. 38. On November 26, 2019, Defendants provided this correspondence to the Court, along with a letter setting forth Defendants' arguments in reply. ECF No. 39.

On April 28, 2020, the Court found that the AC pled actionable misstatements, but granted Defendants' request to dismiss the AC for failure to plead scienter, and further directed Plaintiff to show cause why the dismissal should not be with prejudice. ECF No. 40. On June 8, 2020, Plaintiff responded to the Court's Order to Show Cause by letter, and proffered a proposed Second Amended Complaint ("SAC") that cured the deficiencies the Court previously identified in the AC. ECF No. 43. On June 9, 2020, the Court directed Defendants to respond to Plaintiff's June 8, 2020 letter to the Court. ECF No. 44. Defendants responded on June 22, 2020. ECF No. 48.

On June 23, 2020, the Court entered an Order, which found that the SAC adequately alleged scienter, directed Plaintiff to file the SAC, and ruled that any motion to dismiss the SAC would be denied without prejudice.  ECF No. 49.  On June 24, 2020, Plaintiff filed the SAC.  ECF No. 50. On July 8, 2020, Defendants filed their Answer to the SAC.  ECF No. 54.

The Parties thereafter met and conferred to negotiate a proposed schedule, exchanged document requests, and served interrogatories on each other.

### III.    THE SETTLEMENT

On October 21, 2020, the Parties participated in a remote mediation with Michelle Yoshida, Esq., an experienced mediator.  Following a full day mediation session, the mediator made a proposal to the Parties to settle the Action for $3 million, which both Plaintiff and Defendants accepted.  The Parties thereafter executed a Term Sheet on October 29, 2020 and finalized the terms of the Stipulation executed on December 7, 2020.  The Class, as defined in the Stipulation, consists of:

> All Persons and entities that purchased or otherwise acquired Nabriva common stock during the period from January 4, 2019 through April 30, 2019, both dates inclusive, and who were damaged thereby.

Excluded from the Class are Defendants; the officers, directors, and affiliates of Nabriva; any entity in which Defendants have or had a controlling interest; and the immediate family members, legal representatives, heirs, successors, or assigns of any of the above.

Under the Settlement's terms, Nabriva or its insurers will pay $3 million in cash into an Escrow Account maintained by the Escrow Agent on behalf of Plaintiff and the Class, within ten (10) business days from the day the Court enters the Preliminary Approval Order (together with all interest earned thereon, the "Gross Settlement Fund").

The Gross Settlement Fund shall be used first to pay the following: (1) taxes and tax

expenses; (2) Notice and Administration Expenses; (3) attorneys' fees and expenses, including expert fees and consultants, incurred in connection with prosecuting this Action; and (4) a reimbursement award to Plaintiff, if any. The remaining balance, the "Net Settlement Fund," shall be paid to Authorized Claimants on a pro rata basis as set forth in the Notice and the proposed Plan of Allocation contained therein. In exchange for the consideration above, the Settlement provides that Plaintiff and the Class Members release known and unknown claims against Defendants, Defendants' Counsel, and other Released Parties arising from their Class Period purchases of Nabriva common stock and the facts alleged in this Action. The Settlement also provides that Defendants release any claims against Plaintiff, all Class Members, or Co-Lead Counsel related to this Action or the prosecution thereof.

## IV.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Courts should approve a class action settlement if it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).[2] The Second Circuit recognizes "the strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012). "Review of a proposed class action settlement generally involves a two-step process: preliminary approval and subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). In assessing whether to preliminarily approve a settlement, "courts should give proper deference to the private consensual decision of the parties," and should bear in mind "the unique ability of class

---

[2] Unless otherwise noted, all emphasis is added and internal citations are omitted throughout.

and defense counsel to assess the potential risks and rewards of litigation." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, *17-18 (E.D.N.Y. Apr. 17, 2015), *adopted by* 2015 U.S. Dist. LEXIS 73025 (E.D.N.Y. June 5, 2015).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). As set forth below, this Settlement satisfies both prongs. It meets the criteria for final approval expressly enumerated in Rule 23(e)(2), as well as those typically considered in this Circuit articulated in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Additionally, the Settlement Class meets the standards for certification for purposes of effectuating the Settlement.

### A. The Settlement Satisfies the Factors for Final Approval under Rule 23(e)(2) and *Grinnell*

The Settlement is highly beneficial to the Settlement Class, and easily satisfies both the factors articulated in the recent amendments to Rule 23(e)(2) and in *Grinnell*. Under the recent amendments to Rule 23(e)(2), courts assessing approval are to consider whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

> (i) The costs, risks, and delay of trial and appeal;

> (ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) The terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  These factors "add to, rather than displace, the *Grinnell* factors." *In re*

*Payment Card Interchange Fee & Merch. Antitr. Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

Courts in the Second Circuit have long considered the following factors, set forth in *Grinnell*, to

evaluate "whether a class action settlement is fair, reasonable, and adequate under Rule 23":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class
> to the settlement; (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of
> maintaining the class through the trial; (7) the ability of the defendants to withstand a
> greater judgment; (8) the range of reasonableness of the settlement fund in light of the best
> possible recovery; and (9) the range of reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS

179836, *35-36 (S.D.N.Y. Oct. 16, 2019) (citing *Grinnell*, 495 F.2d at 463).  While the Second

Circuit has not prescribed any set order of consideration, at least one district court has suggested

that courts first "consider[] the Rule 23(e)(2) factors, and then consider[] additional Grinnell

factors not otherwise addressed by the Rule 23(e)(2) factors." *See Payment Card*, 330 F.R.D. at

29.  However, the court should not "engage in a complete analysis at the preliminary approval

stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the

factors applicable to final approval'" when considering preliminary approval.  *Id.* at 30 n.24

(quoting *In re Platinum & Palladium Commodities Litig.*, No. 10-CV3617, 2014 U.S. Dist. LEXIS

96457 at *38 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class

to the settlement—may be premature at this stage.  *Id.*

**1.  The Settlement Class Was Well-Represented by Plaintiff and Co-Lead Counsel**

Plaintiff   and   Co-Lead   Counsel   more   than   satisfy   Rule   23(e)(2)(A)'s   "adequate

- 6 -

representation" requirement.   That requirement focuses mainly on the "alignment of interests between class members." *See Wal-Mart*, 396 F.3d at 106-07.  Here, Plaintiff's interests (and those of Co-Lead Counsel) were fully aligned at all times with the interests of absent Settlement Class Members.   All bring the exact same claims asserting the same legal theory over the same Class Period.   And, because Plaintiff, Co-Lead Counsel, and the Class Members all "share the common goal of maximizing recovery, there is no conflict of interest."  *See In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Plaintiff and Co-Lead Counsel vigorously litigated this case since their appointment on July 22, 2019.  Plaintiff has significantly contributed to the Action by overseeing the litigation, and by participating in settlement discussions with Co-Lead Counsel.  Plaintiff and Co-Lead Counsel substantially advanced this Action and benefitted the Settlement Class by: (i) conducting an extensive review of all relevant public filings and other publicly-available information; (ii) obtaining critical information from the FDA after substantial negotiation that supported Plaintiff's claims;  (iii) consulting with two experts on clinical development and the regulatory process (iv) drafting multiple iterations of the complaint, including the SAC; (v) successfully defeating Defendants' attempt to dismiss the SAC; (vi) appearing at Court conferences; (vii) commencing discovery, including the exchange of initial disclosures and serving document requests and interrogatories on Defendants; (viii) drafting a detailed mediation statement that assessed the strengths and weaknesses of the Action, as well as the risks and advantages of continued litigation; (ix) engaging in a full-day mediation session overseen by Ms. Yoshida, resulting in a Settlement that is highly favorable to the Settlement Class; and (x) negotiating the terms of the Settlement, including the Stipulation and exhibits thereto.  Thus, Plaintiff and Co-Lead Counsel readily satisfy Rule 23(e)(2)(A)'s adequate representation requirement.

**2. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations**

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). To that end, a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Here, the Settlement was the result of a mediator's proposal after vigorous negotiation and a full-day mediation session.

**3. The Settlement Is an Excellent Result for the Settlement Class**

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

The proposed Settlement provides a cash payment of $3,000,000 for the benefit of the Settlement Class. This is an excellent result, especially given the significant risks of continued litigation. After consulting with an econometric expert, Plaintiff believes that the maximum damages that the Settlement Class could recover under a well-established, reliable methodology would be between $9.2 and $14 million. The actual damages figure could be much smaller, as Plaintiff might not be able to prove that the entirety of the decline in stock price on the disclosure date was caused by the alleged fraud. The $3 million Settlement represents a recovery above "the range of the average recovery in shareholder litigation." *See P.R. Gov't Judiciary Empls. Ret. Sys. Admin. v. Marcum, LLP*, No. 15 Civ. 1938 (DAB), 2018 U.S. Dist. LEXIS 20824, *21 (S.D.N.Y.

Feb. 1, 2018) (granting final approval of settlement that was 5.6% to 6.9% of estimated class damages of between $15.94 million and $19.64 million); *see also, e.g., Burns v. Falconstor Software*, No. 10 CV 4572 (ERK), 2014 U.S. Dist. LEXIS 203061, *25-26 (E.D.N.Y. Apr. 10, 2014) (recommending approval of settlement that was 17.4% of estimated class damages of $5 million), *adopted by* 2014 U.S. Dist. LEXIS 203012 (E.D.N.Y. May 8, 2014); *In re Giant Interactive Grp., Inc*., 279 F.R.D. 151, 162- 63 (S.D.N.Y. 2011) (granting final approval of settlement that was 16.5% of estimated class damages of $13 million); *In re China Sunergy Sec. Litig*., No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, *15 (S.D.N.Y. May 13, 2011) (finding 18.4% recovery of estimated class damages of $5.7 million "far surpasses the 'average settlement amounts in securities fraud class actions . . . [of] 3% to 7% of the class members' estimated losses.'"); *In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, *20 (S.D.N.Y. July 31, 2008) (granting final approval of settlement that was 10.8% of estimated class damages of $13 million).

The percentage recovery here exceeds the 2.1% median settlement value in 2019 for all securities class actions. *See* NERA, Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review at pp. 18-20 (Feb. 12, 2020).[3]  Thus, the Settlement provides an excellent recovery for the Settlement Class.

### a.  The costs, risks and delay of trial and appeal support approval

The recovery is favorable when considered on its own, and highly favorable when weighed against the risks of continued litigation.  Defendants have vigorously contested their liability for securities fraud, arguing, for example, that their challenged statements were not false or misleading

---

[3]  *available at*: https://www.nera.com/content/dam/nera/publications/2020/PUB_Year_End_ Trends_012120_Final.pdf

when made or made with scienter.  Defendants would certainly continue to challenge falsity and scienter were this case to proceed to summary judgment and trial.  *See e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F.3d 131 (2d Cir. 2001). Moreover, prevailing at summary judgment and trial would guarantee a delay in recovery, but would not necessarily result in a larger recovery. The jury could award a smaller amount of damages, or the verdict could be appealed.  *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an accounting firm and entering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case tried in 1988 on the basis of a Supreme Court opinion handed down in 1994).

Continued litigation would also involve risks relating to class certification.  While Co-Lead Counsel submitted an unopposed request to the Court on September 30, 2020 requesting a pre-motion conference regarding Plaintiff's anticipated motion for class certification, no class has been certified for litigation purposes.  Risks related to class certification "militate[] in favor of settlement approval." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268-69 (S.D.N.Y. 2012).  Moreover, even if a litigation class was certified, risks to maintaining certification would persist; at any time Defendants could move for modification or decertification prior to final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, No. 18-3667, 2020 U.S. App. LEXIS 10817, *5 (2d Cir. Apr. 7, 2020) (*citing* Fed. R. Civ. P. 23(f)).  In fact, in connection with Plaintiff's request for a pre-motion conference, Defendants stated that they did not oppose class certification, but expressly reserved the right to challenge certification of the class at a later stage of the litigation.  ECF No.

67, n. 1.  Continued litigation, in addition to being highly uncertain, would be costly and take years to complete.

### b.   Other 23(e)(2)(C) factors support approval

Rule 23(e)(2)(C) also states that adequacy should be assessed in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors supports approval.

First, the Settlement calls for an experienced Settlement Administrator to process claims and distribute the Net Settlement Fund pro rata to the Class Members according to the defined Plan of Allocation using procedures that are well-established and have been proved effective in securities fraud litigation.  A.B. Data, Ltd., the Settlement Administrator selected by Co-Lead Counsel (subject to Court approval), will process claims under the guidance of Co-Lead Counsel, and provide the Class Members with a reasonable opportunity to cure deficiencies in their claims.  Thereafter, A.B. Data, Ltd. will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Co-Lead Counsel will then move the Court for an order of distribution permitting checks to be mailed to eligible claimants.[4]

Second, as disclosed in the Notice, Co-Lead Counsel, who have not been paid to date, will apply for a fee award not to exceed one-third of the Gross Settlement Fund.  Such a fee would be reasonable for the work performed and the results obtained and consistent with awards in similar

---

[4] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Gross Settlement Fund based on the number or value of the claims submitted.

- 11 -

complex class action cases.  *See, e.g.*, *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017) ("[C]ourts routinely award a percentage amounting to approximately 1/3 of a 10 million dollar settlement."); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653 (BSJ) (MHD), 2011 U.S. Dist. LEXIS 138543, *1 (S.D.N.Y. Dec. 2, 2011) (noting that attorneys' fee of one-third of the $9 million settlement amount was fair, reasonable and adequate); Order, ECF No. 72, *Gauquie v. Albany Molecular Research*, No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017) (approving award of one-third of $2.868 million settlement); *Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222, *13 (E.D.N.Y. Aug. 20, 2019) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."); *Stefaniak v. HSBC Bank USA*, *N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, *10 (W.D.N.Y. June 28, 2008) (collecting cases, awarding attorneys' fee of 33% of $2.9 million settlement amount, and finding fee percentage "typical in class action settlements in the Second Circuit.").

Third, to protect the Settlement and the Settlement Class, the Parties have placed the terms under which Defendants may terminate the Settlement if a certain threshold of Class Members submit valid and timely requests for exclusion into a separate confidential agreement.  Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *See, e.g., Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, *54.

**4.  The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other**

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another.  Under the proposed Plan of Allocation, each Authorized Claimant will receive a pro rata share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all

- 12 -

Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans.  *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### B.  The Remaining *Grinnell* Factors Support Approval

The additional factors articulated in *Grinnell* but not expressly listed in Rule 23(e)(2) include: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.  Here, each supports approval. However, "a court need not find that every factor militates in favor of a finding of fairness; rather, a court 'consider[s] the totality of these factors in light of the particular circumstances." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008).

First, after one and a half years of litigation, Plaintiff and Co-Lead Counsel are well equipped to evaluate the Settlement and understand the strengths and weaknesses they will face at trial.  They conducted an extensive investigation and thoroughly assessed the legal and factual merits of their claims, successfully submitted pre-motion letters to defeat Defendants' attempts to have this Action dismissed, researched class certification, engaged with two experts in FDA procedures and new drug applications, evaluated damages with the assistance of forensic economics experts, thoroughly reviewed Nabriva's public filings and other publicly-available information, exchanged initial disclosures, analyzed Nabriva's insurance coverage, commenced formal discovery upon Nabriva, and made preparations to serve third party discovery in Spain pursuant to the *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* (HCCH 1970 Evidence Convention).  Thus, the litigation had sufficiently progressed to enable Plaintiff and Co-Lead Counsel to effectively assess the Settlement.  *See, e.g.*, *In re Gila*

*Satellite Networks, Ltd*., No. CV-02-1510, 2007 U.S. Dist. LEXIS 68964, at *32-33 (E.D.N.Y. Sept. 18, 2007) ("Although little formal discovery has been completed, Lead Counsel has interviewed several former employees of [Defendant] and obtained a number of internal documents, and all parties have conducted extensive research[.]"); *Burns v. Falconstor Software*, 10 CV 4572 (ERK), 2013 U.S. Dist. LEXIS 204703, *19 (E.D.N.Y. Oct. 9, 2013), adopted by 2013 U.S. Dist. LEXIS 204701 (E.D.N.Y. Oct. 28, 2013) (information gained through the mediation and settlement process found to be sufficient in case without any discovery).

Second, the uncertainty of Plaintiff's ability to collect on a larger judgment "weighs heavily in favor of approving the settlement" in particular where, as here, insurance coverage could be depleted by defense costs if litigation proceeded to trial and appeal. *See In re Adv. Battery Techs. Sec. Litig*., 298 F.R.D. 171, 179 (S.D.N.Y. 2014). On November 5, 2020, Nabriva filed its quarterly report on Form 10-Q for the period ended September 30, 2020, which included a statement that Nabriva's management had concluded that substantial doubt exists about the Company's ability to continue as a going concern for one year. Additionally, Nabriva is now headquartered in Ireland and much of the relevant conduct occurred in Spain, which further complicates any effort to litigate the case to judgment. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 322 (3d Cir. 2011) (en banc) (discussing "the potential drawbacks of litigating and attempting to collect in foreign jurisdictions, including the extensive motion practice and expense such an uncertain tactic would entail.").

Finally, the Settlement is within the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and weaknesses of plaintiffs' case" not "the best of all possible worlds." *In re "Agent Orange" Prod. Liab. Litig*., 597 F. Supp. at 762. Here, the $3 million recovery is reasonable even before

considering potential impediments to continued litigation of this Action and is an excellent recovery after considering such risks.

<h3 style="text-align:center">V.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED</h3>

The Second Circuit has long acknowledged that courts may properly certify a class solely for purposes of effectuating a class action settlement.  *See Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982) ("A blanket rule prohibiting the use of temporary settlement classes may render it virtually impossible for the parties to compromise class issues and reach a proposed class settlement before a class certification. Such a firm restriction does not appear necessary or desirable.").   Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig*., 283 F.R.D. at 186.

As demonstrated below, as the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and Rule 23(b)(3) for the purposes of this Settlement, "certification may be granted." *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).

### A.   The Settlement Class Satisfies the Requirements of Rule 23(a)

### 1. Numerosity

The Settlement Class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when a class consists of 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Initial Pub. Offering Sec. Litig*., 260 F.R.D. 81, 90 (S.D.N.Y. 2009).  "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig*., 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, the Settlement Class is comprised of purchasers of Nabriva common stock over a four-month period. According to its quarterly report on Form 10-Q issued for the period encompassing the Class Period, as of April 30, 2020, Nabriva had 72,557,253 ordinary shares outstanding. *See* SEC Form 10-K at 73 (May 5, 2020);[5] *see also In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "'may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period'") (citation omitted). Moreover, during the Class Period, Nabriva had an average daily trading volume of 986,441 shares. As other courts in the Second Circuit have noted, "[c]ommon sense suggests that" moderate trading volume of even 13 million shares of common stock outstanding would result in a sufficient number of purchases to make joinder impracticable. *Wilson v. LSB Indus.*, No. 15 Civ. 7614 (RA) (GWG), 2018 U.S. Dist. LEXIS 138832, *11-12 (S.D.N.Y. Aug. 13, 2018) (*quoting Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 35, 40 (E.D.N.Y. 1997)). Accordingly, the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).

### 2.Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Securities fraud cases like this easily satisfy commonality, because all "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Globalstar Sec. Litig.*, No. 01 Civ 1748(PKC), 2004 U.S. Dist. LEXIS 24164, at *10-11 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this [securities class] action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those

---

[5] *Available at:* https://www.sec.gov/Archives/edgar/data/1641640/000110465919028565/a19-7748_110q.htm.

statements were knowingly and recklessly issued, and ensuing causation issues.").

Here, questions of law and fact common to the Settlement Class include whether Defendants made materially misleading statements, whether the statements were made with scienter, and whether Defendants' reckless misrepresentations damaged investors.   These questions are susceptible to common proof at trial because their resolution does not differ based on the identity of the plaintiff.  Thus, commonality is met.  *See id*.

### 3.Typicality

The typicality requirement of Rule 23(a)(3) is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health & Welfare Fund v. MerckMedco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  Absolute identity is not required.  *In re Marsh & McLennan Cos., Inc. Sec. Litig*., No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, *31 (S.D.N.Y. Dec. 23, 2009).  The critical question is whether the proposed class representatives and the class assert a "common course of conduct" by Defendants. "Factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Id*.

Here, Plaintiff's claims and those of the proposed Settlement Class are based on the exact same misrepresentations and omissions that Defendants made to the investing public during the Class Period, as well the Individual Defendants' control of Nabriva.  Thus, any Class Member's claim will rely on the same course of events. *See In re Twinlab Corp. Sec. Litig*., 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which

artificially inflated the stock").

### 4.Adequacy

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is measured by two standards: (i) whether the claims of the proposed class representative conflicts with those of the class; and (ii) whether the proposed class counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Both prongs are met here.

First, there is no antagonism or conflict of interest between Plaintiff and the proposed Settlement Class. All purchased Nabriva common stock during the Class Period, and all were injured by the same materially false statements and omissions. If Plaintiff is to prove his claim at trial, he would also be able to prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459-60 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Thus, the interests of Plaintiff and the other members of the Settlement Class are aligned, and he shares the common objective of maximizing their recovery from Defendants. *See Polaroid*, 240 F.R.D. at 77 ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Second, Plaintiff has demonstrated his commitment to this litigation by retaining qualified counsel. Co-Lead Counsel have extensive experience and expertise litigating securities class action cases and have zealously advanced the interests of absent Class Members, culminating in this favorable Settlement. Accordingly, Rule 23(a)(4) is satisfied.

- 18 -

## B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

### 1. Common Legal and Factual Questions Predominate

Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp*., 778 F.3d 401, 405 (2d Cir. 2015). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *In re Veeco Instruments, Inc*., *Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). Indeed, "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). Thus, "if the liability issue is common to the class, common questions are held to predominate over individual questions." *Marsh & McLennan*, 2009 U.S. Dist. LEXIS 120953, at *35. This "test [is] readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, "questions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary." *Veeco*, 235 F.R.D. at 240; *see also* V.A.2, V.A.4, *supra*. Because this is a settlement class, "concerns about whether individual issues [like reliance] would create 'intractable management problems' at trial drop out of the predominance analysis because 'the proposal is that there be no trial.'" *In re Am. Int'l Grp. Sec. Litig*., 689 F.3d 229, 240 (2d Cir. 2012) (*quoting Amchem*, 521 U.S. at 620, and vacating denial of class certification in a preliminary approval decision).

- 19 -

## 2. A Class Action is Superior to Other Methods of Adjudication

Class adjudication of this Settlement and Action is superior to other methods.  Rule 23(b)(3) sets forth non-exhaustive factors to be considered in assessing superiority: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* Fed. R. Civ. P. 23(b)(3).

Here, no opt-out actions have been filed and there is no evidence that Class Members desire to bring separate individual actions.  Furthermore, it is desirable to concentrate the claims in this Court as Nabriva common stock was, and is, traded on the NASDAQ, and the Court is already familiar with the factual and legal issues in the case.  Finally, since Plaintiff's request for class certification is for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems.  *See Amchem*, 521 U.S. at 620.

In sum, the proposed Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(3) for the purpose of Settlement and should be preliminarily certified.  *See id*.

### C.  Co-Lead Counsel Should be Appointed as Class Counsel

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g). After being appointed Co-Lead Counsel, *see* ECF No. 20, Pomerantz and Holzer have substantially advanced the interests of the Class, as described above in Sections IV.A.1, IV.B and V.A.4.  They have spent hundreds of hours each and advanced a substantial monetary amount in expenses, risking the possibility that such time and expenses might not be reimbursed.  Moreover, Co-Lead Counsel are highly experienced litigators specializing in complex securities fraud actions. Accordingly, Co-Lead Counsel are adequate to serve as and should be appointed as Class counsel.

## VI.   THE PROPOSED PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

The proposed Plan of Allocation, which is detailed in the Notice to be sent to the Class Members, will govern how the Settlement proceeds will be distributed among Class Members who timely file a valid Proof of Claim. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia Co.*, 2019 U.S. Dist. LEXIS 179836, *55. The proposed Plan of Allocation was prepared by Co-Lead Counsel after consulting with experts, and rationally reflects the allegations and causes of action asserted in this case.  It will result in a fair and equitable distribution of the proceeds among Class Members who submit valid claims, as all Class Members are treated equally under the Plan.  Each will receive no more, or less, than his or her pro rata share of the Net Settlement Fund based on recognized losses assessed by the uniform formula described in the Notice.

## VII.   THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)).  Pursuant to the PSLRA, the notice must also include an explanation of plaintiffs' recovery. *In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, *44 (S.D.N.Y. June 29, 2010) (*quoting* 15 U.S.C. §78u-4(a)(7)). The notice must "fairly apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Solutions, Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Plaintiff's proposed Notice and Summary Notice, attached as Exhibits 1-D and 1-C to the

Stipulation, satisfy these standards.  As specified by Rule 23(c)(3) and 15 U.S.C. §78u4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the prospective Settlement Class and who is excluded; (3) the reasons the Parties have proposed the Settlement; (4) the amount of the Gross Settlement Fund; (5) the Settlement Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that Co-Lead Counsel may seek; (8) the maximum amount Co-Lead Counsel will request as a reimbursement award to Plaintiff; and (9) the plan for allocating the Settlement proceeds to the Class.  Ex. 1-D.  The Notice also describes the process for seeking exclusion from the Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses.  *Id.*

The proposed Preliminary Approval Order directs that within twenty-one (21) calendar days after entry of the Preliminary Approval Order, the Settlement Administrator shall cause the Notice to be mailed to all Class Members who can be identified with reasonable effort, both directly and, for shares held in street name, through the brokers that serve as their nominees.  Ex. 1-A at ¶5(a).  In addition to the Notice, a Summary Notice will be published on a national business newswire within ten (10) calendar days after the mailing of the Notice begins.  Ex. 1-A at ¶5(b).  Accordingly, the proposed plan of notice meets all the requirements of due process, the PSLRA, and the Federal Rules of Civil Procedure.

## VIII.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiff respectfully proposes the schedule set forth below for Settlement-related events.  The specific timing of events is determined by the date on which the Final Approval Hearing is scheduled.  In order to allow sufficient time for the Notice to be disseminated to the potential Class Members, Plaintiff requests that the Court schedule the Final Approval Hearing for a date not

- 22 -

earlier than 100 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Fee and Expense Application, (Preliminary Approval Order ¶13) | 30 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶10) and Deadline for submitting Claim Forms (Preliminary Approval Order, ¶9(a)) | 14 calendar days prior to Final Approval Hearing |
| Deadline for filing responses to any objections or in further support of the Settlement, the Plan of Allocation, and the Fee and Expense Application (Preliminary Approval Order ¶12) | 7 days prior to the Final Approval Hearing |
| Final Approval Hearing (Preliminary Approval Order, ¶2) | To be determined by the Court, approximately 100 days after entry of the Preliminary Approval Order |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the proposed Settlement, (2) certify the Class for purposes of effectuating the Settlement, (3) approve the Plan of Allocation, (4) approve the proposed form and manner of notice, and (5) schedule a Final Approval Hearing.

Dated:  December 7, 2020

**Pomerantz LLP**

By:  */s/ Omar Jafri*

Patrick V. Dahlstrom
Omar Jafri
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
E-mail:  pdahlstrom@pomlaw.com
             ojafri@pomlaw.com



**Holzer & Holzer LLC**

Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway, Suite 410
Atlanta, GA 30388
Telephone: (770) 392-0090
Email: cholzer@holzerlaw.com
          mdees@holzerlaw.com

*Co-Lead Counsel for Lead Plaintiff
and the Class*