**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY ENRIQUEZ, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NABRIVA THERAPEUTICS PLC, TED )<br>SCHROEDER, GARY SENDER, and )<br>JENNIFER SCHRANZ, )<br>)<br>Defendants. ) | **Case No. 19 Civ. 4183 (VM)**<br><br>**Honorable Victor Marrero**<br><br><u>**CLASS ACTION**</u> |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF UNOPPOSED MOTION FOR**
<u>**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

**TABLE OF CONTENTS**

|  |  | PAGE |
|---|---|---|
| **I.** | **INTRODUCTION** | 1 |
| **II.** | **NATURE OF THE ACTION** |  |
|  | A. Facts and Procedural History | 2 |
|  | B. The Settlement | 3 |
|  | 1. Cash Consideration and Release | 3 |
|  | 2. Notice to the Class | 4 |
|  | 3. Exclusion and Objection Deadline | 4 |
|  | 4. The Plan of Allocation | 4 |
| **III.** | **ARGUMENT** | 5 |
|  | A. The Court Should Approve the Settlement | 5 |
|  | 1. Certification of the Class Remains Appropriate | 5 |
|  | 2. The Court Should Approve the Settlement Because the Settlement is Fair, Reasonable, and Adequate | 5 |
|  | a. Complexity, Expense, and Likely Duration of the Litigation | 7 |
|  | b. Adequate Notice and Reaction of the Class | 8 |
|  | c. Stage of Proceedings | 8 |
|  | d. Risks of Establishing Liability and Damages | 9 |
|  | e. Risks of Maintaining the Class Action Through Trial | 10 |
|  | f. Range of Reasonableness of the Settlement | 10 |
|  | g. The Settlement Resulted From Arm's-Length Negotiations | 12 |
|  | h. Greater Recovery | 13 |
|  | B. The Court Should Finally Approve the Plan of Allocation | 13 |
| **IV.** | **NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS** | 14 |
| **V.** | **CONCLUSION** | 15 |

**CASES**                                                                                                    **PAGE(S)**

*Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK),
    2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ...................................................................6

*Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA),
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..............................................................8, 15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)......................................7, 8, 11

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)..............................................................5

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)...........................................................14

*Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)..................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014)................................................10

*In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................9, 10, 12

*In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006) ............................................................11

*In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...............................................................11

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) .............................7

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ..........................15

*In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306 (E.D.N.Y. 2006) ............................7, 8, 9

*In re MetLife Demut. Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010).....................................10, 11

*In re Oracle Sec. Litig.*, Case No. C-90-0931-VRW,
    1994 WL 502054, (N.D. Cal. June 18, 1994)..............................................................13,14

*In re PaineWebber Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997) ............................................10

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997)...............................10, 11

*In re Salomon Inc Sec. Litig.*, No. 91 CIV. 5442 (RPP),
    1994 WL 265917 (S.D.N.Y. June 16, 1994) ...................................................................13

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999).........................................12,13

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................9

*In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35 (2d Cir. 1986) .............................................7, 9

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ......................................9

*Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007)..................................................8

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995)...................................6

*Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146 (E.D.N.Y. 1995) ..........................................7

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y. 1993)...............................................6

*Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx),
　　2017 WL 4877417 (C.D. Cal. Oct. 24, 2017).....................................................................12

*Velez v. Novartis Pharm. Corp.*, 04 CIV 09194 CM,
　　2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)......................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ...................................6, 12

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1983) .......................................................................6

**RULES**

Fed. R. Civ. P. 23......................................................................................................................14, 15

**SECONDARY AUTHORITIES**

4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002)................13

Manual for Complex Litigation, Third § 30.42 (1995)...................................................................12

NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2019 Full-
　　Year Review (Feb. 12, 2020), *available at*:
　　https://www.nera.com/content/dam/nera/publications/2020/PUB_Year_End_
　　Trends_012120_Final.pdf..................................................................................................12

## I.     INTRODUCTION

Plaintiff Jonathan Schaeffer ("Plaintiff"), on behalf of himself and the Class,[1] respectfully submits this memorandum of law in support of his motion for final approval of the proposed settlement ("Settlement"), as set forth in the Stipulation of Settlement filed with the Court on December 7, 2020 (ECF No. 71-1).

Plaintiff proposes that the Class Members release the claims advanced in this Action for $3 million. The Parties reached the Settlement after extensive negotiations with the assistance of an experienced mediator. Plaintiff scrutinized the claims brought on behalf of the Class through an extensive investigation, drafted multiple complaints, successfully convinced the Court to allow the case to proceed to discovery, and took discovery. Through these processes, Plaintiff came to appreciate the strengths and weaknesses of his case.

Plaintiff followed the Court-approved notice plan to solicit claims, requests for exclusions, and objections. **As of April 14, 2021, Plaintiff has not received any requests for exclusion nor any objections.** For these reasons and those set forth below, the Settlement is fair, reasonable, and adequate, and the Court should approve it.

Plaintiff's Counsel also consulted with an economic expert to formulate a fair, reasonable, and adequate Plan of Allocation for the Settlement Fund. The Plan of Allocation treats all claimants fairly based on the applicable law. The Court should also approve the Plan of Allocation.

---

[1] The Class consists of all persons and entities that purchased or otherwise acquired Nabriva common stock during the period from January 4, 2019 through April 30, 2019, both dates inclusive, and who were damaged thereby. Excluded from the Class are Defendants; the officers, directors, and affiliates of Nabriva; any entity in which Defendants have or had a controlling interest; immediate family members, legal representatives, heirs, successors, or assigns of any of the above.

## II. NATURE OF THE ACTION

### A. Facts and Procedural History

Plaintiff's Consolidated Second Amended Class Action Complaint (the "Complaint") (ECF No. 50) alleged that Nabriva Therapeutics plc ("Nabriva" or the "Company") and Individual Defendants Ted Schroeder, Gary Sender and Jennifer Schranz knew or recklessly disregarded that there were serious violations of Current Good Manufacturing Practice ("cGMP") at the manufacturing facility where CONTEPO™, an injectable antibiotic that purports to treat serious urinary tract infections, was produced yet still misleadingly hyped the FDA's acceptance of the application for CONTEPO and omitted to tell investors that the serious cGMP violations would inevitably delay approval of the application. ¶¶45-101.[2] On April 30, 2019, Nabriva announced that the United States Food and Drug Administration ("FDA") had refused to approve the marketing application for CONTEPO because of the cGMP violations. ¶97. On this news, Nabriva's share price declined $0.82 per share, or over 27%, to close at $2.17 per share on May 1, 2019, on heavy trading volume. ¶98.

Plaintiff filed an Amended Complaint on September 23, 2019. After the Parties exchanged and filed letters related to Defendants' motion to dismiss the Amended Complaint, on April 28, 2020, the Court found that the Amended Complaint pled actionable misstatements but granted Defendants' request to dismiss the Amended Complaint for failure to plead scienter. ECF No. 40. On June 8, 2020, Plaintiff proffered the Complaint, which cured the deficiencies that the Court previously identified in the Amended Complaint. ECF No. 43. After another exchange of letters between the Parties regarding the sufficiency of the Complaint, on June 23, 2020, the Court entered an Order and found that the Complaint adequately alleged scienter, directed Plaintiff to file the

---

[2] "¶_" refers to the Complaint.

Complaint, and ruled that any motion to dismiss the Complaint would be denied without prejudice. ECF No. 49. On June 24, 2020, Plaintiff filed the Complaint. ECF No. 50. On July 28, 2020, Defendants filed their Answer to the Complaint. ECF No. 54.

Subsequently, the Parties engaged in discovery, including exchanges of initial disclosures, document requests and interrogatories, Plaintiff filed an unopposed motion for class certification, and prepared to obtain and review third party discovery from Nabriva's contract manufacturer in Spain. *See* Declaration of Omar Jafri ("Declaration" or "Decl.") at ¶¶29-39.

**B.     The Settlement**

After the case advanced into discovery, the Parties participated in a mediation session with Michelle Yoshida, Esq. of Phillips ADR, an experienced mediator, on October 21, 2020. Decl. ¶42. During the mediation, the mediator made a proposal to all parties to settle this Action for $3 million. *Id.* The Parties accepted the mediator's proposal, executing a Term Sheet on October 29, 2020. *Id*. The Settlement's terms were then finalized in the Stipulation executed on December 7, 2020. *Id*.

On December 7, 2020, Plaintiff filed a motion for preliminary approval of the Settlement, which included the Stipulation and proposed notices to the Class Members. ECF Nos. 70-71. On January 28, 2021, the Court entered the Preliminary Approval Order, called for notice, and set a Fairness Hearing for May 14, 2021, at 10:30 a.m. ECF No. 73.

**1.     Cash Consideration and Release**

The Settlement provides for a payment of $3 million in cash to pay the Class's claims. If the Court grants final approval of the Settlement, Plaintiff, on behalf of the Class Members, will forever release their claims against the Defendants and their related parties that were alleged or could have been alleged in this Action. Defendants will release any claims that could have been brought against Plaintiff related to the prosecution of this Action.

### 2. Notice to the Class

Pursuant to the Preliminary Approval Order, the Notice was mailed to potential class members, brokers, and nominee holders. *See* Declaration of Nancy V. Rogers Regarding Notice Administration ¶6 ("Rogers Decl."). The Notice advised potential class members of the terms of the Settlement and Plan of Allocation; that Plaintiff's Counsel would seek a fee award not to exceed one-third of the Settlement Amount, plus interest; recovery of actual litigation expenses not to exceed $115,000; an award to Plaintiff of $5,000; and that any objections to any aspect of the Settlement or to the fee and expense request were due to be received by the Court and counsel no later than April 30, 2021. Rogers Decl., Ex. A.

As of the date of this writing, 8,538 copies of the Notice were mailed to potential class members. Rogers Decl. ¶6. The Settlement Administrator also established and continues to maintain a website dedicated to the Settlement, www.nabrivassecuritieslitigation.com. *Id.* ¶9. The website also provides a link for online claim filing and lists important deadlines. *Id.* Additionally, the Settlement Administrator disseminated the Summary Notice over *PR Newswire*. *Id.* ¶7.

### 3. Exclusion and Objection Deadline

Requests for exclusion must be received on or before April 30, 2021. As of April 14, 2021, there have not been any requests for exclusion. Rogers Decl. ¶10. Objections to the Settlement must be received by the Court and counsel by April 30, 2021. As of this writing there have been no objections to any aspect of the Settlement. Decl. ¶65.

### 4. The Plan of Allocation

The Notice sent to potential Class Members describes the Plan of Allocation. Rogers Decl., Ex. A at 3-4. Plaintiff's Counsel formulated the Plan of Allocation with the help of the Settlement Administrator to distribute the Settlement Fund fairly and reasonably to Class Members consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of

Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to revelation of the truth. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation establishes a formula which determines Authorized Claimants' recognized losses based on the foregoing application of the securities laws and calculates Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiff). Rogers Decl., Ex. A at 3-4.

## III. ARGUMENT

### A. The Court Should Approve the Settlement

#### 1. Certification of the Class Remains Appropriate

Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representativeness. In addition, Federal Rule of Civil Procedure 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

In the Preliminary Approval Order, the Court found, "preliminarily and for purposes of this Settlement only," that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure had been satisfied. ECF No. 73, at 1-2 (finding each of the six factors of Rule 23(a) and (b)(3) had been satisfied). Nothing has changed since the Court entered the Preliminary Approval Order. Thus, the Court should grant final certification to this Class.

#### 2. The Court Should Approve the Settlement Because It is Fair, Reasonable, and Adequate

As a matter of public policy, courts favor settlements, *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1983),[3] especially in complex class actions like this one. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

When evaluating a proposed settlement under Federal Rule of Civil Procedure 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). A proposed class action settlement enjoys a presumption of fairness where, as here, it resulted from arm's-length negotiations, through a mediator, conducted by capable counsel who are experienced in class action litigation arising under the federal securities laws. *See Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *4 (E.D.N.Y. Apr. 11, 2014) (citing *Wal-Mart*, 396 F.3d at 116). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

---

[3] Emphasis is added and internal citations and quotations are omitted unless otherwise stated.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). In weighing these factors, courts recognize that settlements require give and take between the negotiating parties. Thus, courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.")

The proposed settlement is fair, reasonable and adequate under the *Grinnell* factors and the Court should approve it.

### a. Complexity, Expense, and Likely Duration of the Litigation

The Settlement avoids further, expensive litigation that would not necessarily lead to a greater recovery for the Class Members. *See Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class."). "[F]ederal courts [] have long recognized that [securities class action] litigation is notably difficult and notoriously uncertain." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011).

While this action was pending, Plaintiff investigated and drafted multiple complaints, exchanged and filed multiple letters on Defendants' attempt to dismiss the complaints, and initiated steps to take discovery. Continuing discovery and retaining experts would be expensive, and a motion for summary judgment, and trial would also be expensive and risky. Not only would the Class risk recovering nothing at all or less than the Settlement, but because the loser at trial would almost certainly appeal, the Class would likely not collect any judgment for many years. *See In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006) ("A trial would probably not have resulted in the conclusion of the action. Time-consuming post-trial motions and appeals were almost inevitable. The action could have gone on for many more years. Either no

recovery for the class or substantial loss to defendants could have ultimately resulted.”). Moreover, as in this case “[t]he complexities were especially acute given the case’s international dimension, involving . . . foreign witnesses, and foreign-language documents and [anticipated] deposition testimony . . . .” *Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, *18 (S.D.N.Y. Oct. 16, 2019).

### b.      Adequate Notice and Reaction of the Class

A “[l]ack of objection is strong evidence of the settlement's fairness.” *Luxottica*, 233 F.R.D. at 311; *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people).  As of April 14, 2021, no Class Members have requested exclusion from the Settlement, and no one has objected to the Settlement.  Rogers Decl. ¶10; Decl. ¶65. Plaintiff will address any requests for exclusion or objections in his Reply, should any be received.

### c.      Stage of Proceedings

The Parties agreed to the Settlement only after Plaintiff: (1) investigated the claims in this Action to plead an initial complaint and two detailed amended complaints, which required scouring public information, obtaining documents from the FDA through a Freedom of Information Request, and hiring private investigators and experts; (2) defeated Defendants’ attempt to have the Complaint dismissed; (3) served discovery requests and interrogatories; (4) consulted with an economic expert regarding maximum estimated damages; (5) filed an unopposed motion for class certification, and (6) negotiated the Settlement.  Decl. ¶¶18-38.  Accordingly, Plaintiff had the information he needed to evaluate the Settlement, and before entering into the Settlement, Plaintiff’s Counsel and Plaintiff understood the strengths and weaknesses of his case. *See Luxottica*, 233 F.R.D. at 312 (settlement approved where counsel had “a clear view of the strengths

and weaknesses of the case") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986). The stage of proceedings thus weighs in favor of approving the Settlement.

### d.      Risks of Establishing Liability and Damages

In assessing class settlements, courts recognize that the immediacy and certainty of a recovery provide benefits to the class.  *See Luxottica*, 233 F.R.D. at 316 ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate").  Chasing a better result through continued litigation risks that Class Members would end up with less money or no money at all.

One of these risks is that the Court might grant summary judgment.  One of the elements Plaintiff must prove, scienter, is notoriously difficult to establish.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008). In this case, Defendants strenuously challenge that element as well as whether Plaintiff pled false or misleading statements.  There is a risk that the Court could agree that Defendants did not materially mislead investors or do so with reckless disregard for the truth.  If the Court granted summary judgment, then Plaintiff would have spent years, even more attorney hours, tens of thousands of dollars in additional costs, and many judicial resources, and recovered nothing.

Likewise, the jury might find against Plaintiff at trial and Plaintiff and the Class would recover nothing after expending significantly more time, expense, judicial resources, *and* the jury's time.  Proof of damages in a securities case also is always difficult, and invariably requires highly technical expert testimony.  The experts retained by Plaintiff and Defendants no doubt would have widely divergent views as to the range of recoverable damages at trial.  Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise.  *See generally In re Am. Bank Note Holographics*, 127 F.

Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Lead Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Finally, a favorable jury verdict might be reversed on appeal. In that case, in addition to all the costs of taking a case through trial, Plaintiff would have also spent the Second Circuit's time and again recovered nothing.

### e. Risks of Maintaining the Class Action Through Trial

Another risk is that the Court might deny class certification. Although Defendants did not oppose Plaintiff's motion for class certification, the Court did not rule on the motion and Defendants reserved their right to challenge certification at a later stage of the proceedings. In maintaining class certification, Defendants may challenge whether Nabriva's common stock traded on an efficient market, entitling investors to a presumption of reliance on Defendants' alleged false statements and omissions. Defendants could then attempt to rebut that presumption by showing a lack of price impact. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). Further, the Parties may dispute whether Nabriva's common stock traded on an efficient market with expert testimony, subjecting the Class to all the risks inherent to any such battle of the experts. *See In re MetLife Demut. Litig.*, 689 F. Supp. 2d 297, 338-39 (E.D.N.Y. 2010). The risks of maintaining a class action through trial thus weigh in favor of approving the Settlement.

### f. Range of Reasonableness of the Settlement

Defendants have no economic incentive to enter into settlements unless they receive a discount on the value of the claims. Further, in a factually and legally complex securities class action lawsuit, responsible counsel cannot be certain that they will be able to obtain – and enforce

– a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992).

Indeed, the Second Circuit has held that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455; *accord In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455, n.2. Courts agree that the determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. *MetLife*, 689 F. Supp. 2d at 340 (citing *PaineWebber*, 171 F.R.D. at 130).

In this case, of course, the Settlement recovers a substantial portion – in the range of 21.3% to 32.6% – of maximum estimated damages. This percentage of recovery of damages is well above the range of typical class action securities settlements. *See, e.g.*, *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses); *Velez v. Novartis Pharm. Corp.*, 04 CIV 09194 CM, 2010 WL 4877852, *14 (S.D.N.Y. Nov. 30, 2010) (noting that "courts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery'" and collecting cases from the Southern District where settlements were approved for percentages of estimated damages such as 1.6%, 2%, and 5%). Moreover, the percentage recovery also exceeds the 2.1% median settlement value in 2019 for all

securities class actions.  *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* at pp. 18-20 (Feb. 12, 2020).[4] Thus, the Settlement proposes a reasonable recovery to Class Members.

### g.      The Settlement Resulted From Arm's-Length Negotiations

The experience and reputation of the Parties' counsel and the arm's-length nature of the negotiations is entitled to great weight.  *See, e.g.*, *Wal-Mart*, 396 F.3d at 116 (quoting Manual for Complex Litigation, Third § 30.42 (1995)) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'"); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 428 ("Courts have looked to ensure that the settlement resulted from arm's-length negotiations between counsel possessed of experience and ability necessary to effective representation of the class's interests.").

The record demonstrates the procedural fairness of the Settlement.  The proposed Settlement was the result of lengthy negotiations between Plaintiff's Counsel and defense counsel, with the aid of well-regarded mediator Michelle Yoshida, Esq.  *See Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement as the "Proposed Settlement is the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida of Phillips ADR.").  The attorneys on both sides are experienced and thoroughly familiar with the factual and legal issues posed in the litigation (as evidenced by the procedural history of the case and the issues briefed before the Court).  Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274,

---

[4] *available at*: https://www.nera.com/content/dam/nera/publications/2020/PUB_Year_End_ Trends_012120_Final.pdf.

280 (S.D.N.Y. 1999) (when settlement negotiations are conducted at arm's length, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (quoting *In re Paine Webber Ltd. P'ships. Litig.*, 171 F.R.D. at 125); *In re Salomon Inc Sec. Litig.*, No. 91 CIV. 5442 (RPP), 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994) (judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); 4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 at 87-89 (4th ed. 2002).

Plaintiff's Counsel urges final approval of the proposed Settlement based upon their: knowledge of the strengths and weaknesses of the case; analysis and investigation to date; the likely recovery at trial and/or after appeal; and experience in evaluating proposed class action settlements. Defendants are also represented by highly-capable counsel that zealously represented their clients, WilmerHale LLP. These experienced firms entered into the Settlement following extensive negotiation.

### h. Greater Recovery

For the reasons explained herein, the possibility of greater recovery than provided by the Settlement is not a guarantee and poses several risks to continue the litigation. If the Action proceeds, both sides would be expending substantial resources and thus could deplete funds available to the Class.

The Settlement should therefore be finally approved because it is fair, adequate and reasonable under the Second Circuit's *Grinnell* factors.

### B. The Court Should Approve the Plan of Allocation

The Plan of Allocation was formulated with the principles of loss causation in mind. Therefore, those shareholders who bought and then sold shares, "before the relevant truth begins to leak out" have no recognized losses under the Plan of Allocation because "the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342; *see also In re Oracle Sec. Litig.*, Case No.

C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable").

In addition to excluding those who incurred no provable damages, the Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid. Rogers Decl., Ex. A at 3-4. After considering lack of loss causation and the timing of Class Members stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position. The Net Settlement Fund will be distributed on a *pro rata* basis depending on a Class Member's recognized losses.

In short, the Plan of Allocation has a rational basis, Plaintiff's Counsel believes it fairly compensates Class Members, and this Court should approve it. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'").

## IV. NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, including the following, without limitation: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Class Members; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Plaintiff's Counsel, administrative costs, and an award to Plaintiff;

14

(vii) the Class Members' rights, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Class Member to examine the Court records should they desire to do so; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (xi) the binding effect of a judgment on Class Members.

The Notice was disseminated under Plaintiff's Counsel's supervision by the Court-appointed third-party Settlement Administrator, A.B. Data. Rogers Decl. ¶6. In accordance with the Court's orders, A.B. Data distributed 8,538 Notice and Claim Forms to Class Members, brokers, and nominee holders. *Id*. ¶6. The Summary Notice was posted over *PR Newswire* on February 26, 2021. *Id*. ¶7. The Notice and Claim Forms were also available on a website that A.B. Data maintains dedicated to the Settlement. *Id.* ¶9.

This combination of individual first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire and posted on the internet, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *Christine Asia*, 2019 WL 5257534, at *16 ("the combination of Notice Packets sent individually by first-class mail and/or e-mail to those Class Members who could be identified with reasonable effort, combined with the print and Internet-based publication of Settlement documents was 'the best notice . . . practicable under the circumstances.' Fed. R. Civ. P. 23(c)(2)(B)").

## V.     CONCLUSION

For the foregoing reasons, the Court should (i) certify the Class, (ii) approve the Settlement, and (iii) approve the Plan of Allocation.

Dated: April 14, 2021

**Pomerantz LLP**

By: */s/ Omar Jafri*

Patrick V. Dahlstrom
Omar Jafri
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
E-mail: pdahlstrom@pomlaw.com
        ojafri@pomlaw.com

        -and-

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
        ahood@pomlaw.com

**Holzer & Holzer LLC**

Marshall P. Dees
210 Ashwood Center Parkway, Suite 1010
Atlanta, GA 30388
Telephone: (770) 392-0090
Email: mdees@holzerlaw.com

*Co-Lead Counsel for Lead Plaintiff
and the Class*