**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LARRY ENRIQUEZ, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:19-cv-04183-VM |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT AWARD TO LEAD PLAINTIFF** |
| NABRIVA THERAPEUTICS PLC, TED SCHROEDER, GARY SENDER, and JENNIFER SCHRANZ, | |
| Defendants. | |

**TABLE OF CONTENTS**

PAGE(S)

I. INTRODUCTION ...................................................................................................1

II. THE PERCENTAGE-OF-FUND APPROACH IS APPROPRIATE FOR AWARDING ATTORNEYS' FEES ..............................................................................2

    A. The Guiding Principle for Fee Awards......................................................3

    B. The Court Should Award Counsel a Reasonable Percentage of the Fund..............3

III. THE *GOLDBERGER* FACTORS SUPPORT THE REQUESTED FEE ....................4

    A. Co-Lead Counsel's Expended Time and Labor Support the Requested Fee...........5

    B. The Risks of Litigation Support the Requested Fee .................................................6

    C. The Magnitude and Complexities of the Litigation Support the Requested Fee.....8

    D. The Quality of Counsel's Representation Supports the Requested Fee ..................8

    E. The Requested Fee is a Reasonable Percentage of the Settlement ........................11

    F. Public Policy Considerations Support the Requested Fee .....................................12

    G. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request.........13

    H. The Reaction of the Settlement Class Supports the Fee Request ..........................14

IV. CO-LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY AND SHOULD BE REIMBURSED ..........................................................................15

V. THE AWARD TO PLAINTIFF SHOULD BE APPROVED.....................................16

VI. CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   955 F.3d 254 (2d Cir. 2020)......................................................................................7

*Blum v. Stenson*,
   465 U.S. 886 (1984)...............................................................................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...............................................................................................3

*Burns v. Falconstor Software*,
   No. 10 CV 4572 (ERK), 2014 U.S. Dist. LEXIS 203061
   (E.D.N.Y. Apr. 10, 2014)........................................................................................9

*Burns v. Falconstor Software*
   No. 10 CV 4572 (ERK), 2014 U.S. Dist. LEXIS 203012
   (E.D.N.Y. May 8, 2014) .........................................................................................9

*Christine Asia Co. v. Jack Yun Ma*,
   No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836
   (S.D.N.Y. Oct. 16, 2019); ..............................................................................8, 16

*City of Providence v. Aéropostale, Inc.*,
   No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517
   (S.D.N.Y. May 9, 2014)..................................................................................8, 12

*Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................9, 13, 15

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)..................................................................3, 5, 6, 13

*Gauquie v. Albany Molecular Research*,
   No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017)..............................11, 17

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:18-cv-09784 (CM), 2019 U.S. Dist. LEXIS 218116,
   (S.D.N.Y. Dec. 18, 2019)................................................................................8, 11

*Hayes v. Harmony Gold Mining Co.*,
   No. 08 Civ. 03653 (BSJ) (MHD), 2011 U.S. Dist. LEXIS 138543
   (S.D.N.Y. Dec. 2, 2011)........................................................................................11

*Hicks v. Morgan Stanley & Co.*,
   Case No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 19, 2005) ............................................................................3, 12, 17

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 LMM, 2006 U.S. Dist. LEXIS 84621
(S.D.N.Y. Nov. 16, 2006) ...................................................................................10

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 226 (2d Cir. 1987)..................................................................................6

*In re Ashanti Goldfields Sec. Litig.*,
No. 00-717, 2005 U.S. Dist. LEXIS 28431 (E.D.N.Y. Nov. 15, 2005)...........................15

*In re BioScrip, Inc. Sec. Litig.*,
273 F. Supp. 3d 474 (S.D.N.Y. 2017) .......................................................11, 13

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007
(S.D.N.Y. May 13, 2011)..........................................................................9, 12, 13

*In re Comverse Tech.*,
No. 06-CV-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342
(E.D.N.Y. June 23, 2010) ...................................................................................11

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
No. 1:12-md-02389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) .................6

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*,
No. 02-CV-3400 (CM)(PED), 2010 U.S. Dist. LEXIS 119702
(S.D.N.Y. Nov. 5, 2010) ................................................................................3, 12, 14

*In re Giant Interactive Grp., Inc.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................9

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007)............8

*In re Heritage Bond Litig.*,
No. 02-1475, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ..........................14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ........11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. 2009) ....................16

*In re Top Tankers, Inc. Sec. Litig.*,
No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008).........10

*In re Veeco Instruments Inc. Secs. Litig.*,
No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554
(S.D.N.Y Nov. 7, 2007) ................................................................................3, 9, 10, 17

iii

*In re WorldCom, Inc. Sec. Litig.*,
     388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...............................................................4

*Johnson v. Brennan*,
     No. 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775
     (S.D.N.Y. Sept. 16, 2011) ...............................................................................4

*Maley v. Del Global Techs. Corp.*,
     186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................12

*McDaniel v. County of Schenectady*,
     595 F.3d 411 (2d Cir. 2010)...............................................................................3

*Pearlman v. Cablevision Sys. Corp.*,
     No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222
     (E.D.N.Y. Aug. 20, 2019) ...............................................................................11

*P.R. Gov't Judiciary Emps. Ret. Sys. Admin. v. Marcum, L.L.P.*,
     No. 15 Civ. 1938 (DAB), 2018 U.S. Dist. LEXIS 20824 (S.D.N.Y. Feb. 1, 2018) ............9

*Stefaniak v. HSBC Bank USA, N.A.*,
     No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008)...............11

*Taft v. Ackermans*,
     No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)............14

*TBK Partners, Ltd. v. Warshow*,
     No. 77 Civ. 972 (JMC), 1977 U.S. Dist. LEXIS 13597 (S.D.N.Y. Oct. 5, 1977).............15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
     551 U.S. 308 (2007)......................................................................................12

*Vaccaro v. New Source Energy Partners L.P.*,
     No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785
     (S.D.N.Y. Dec. 14, 2017)...............................................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
     396 F.3d 96 (2d Cir. 2005)......................................................................3, 4, 13

**STATUTES**

15 U.S.C. §78u-4(a)(6) ...............................................................................................4

15 U.S.C. § 78u-4(a)(4) ............................................................................................16

**RULES**

Fed. R. Civ. P. 23(c)(1)(C) ..........................................................................................7

Lead Plaintiff Jonathan Schaeffer ("Plaintiff") respectfully submits this memorandum of law in support of his application for an (1) award of attorneys' fees of 33 1/3% of the Settlement Amount, plus interest; (2) reimbursement of $95,393.68 in litigation expenses; and (3) a reimbursement award to Plaintiff in the amount of $5,000.

## I. INTRODUCTION

Co-Lead Counsel[1] achieved a $3 million cash settlement against Defendants Nabriva Therapeutics plc ("Nabriva"), Ted Schroeder, Gary Sender, and Jennifer Schranz (collectively, "Defendants"). Co-Lead Counsel request that the Court award attorneys' fees in the amount of 33 1/3% of the Settlement Amount, plus interest, which is consistent with Second Circuit precedent and warranted under the facts and circumstances of this Action.

The Settlement is a good result for the Class. The Settlement allows the parties to avoid the considerable risks and expense of class certification, summary judgment, trial, and any appeals. The Settlement Amount represents a range of recovery between 21.3% and 32.6% of Plaintiff's estimate of likely recoverable damages in the range of $9.2 million and 14.1 million, well above the average for securities fraud class actions.

The reaction of the Class strongly supports the requested fees and expenses. Pursuant to the Preliminary Approval Order [ECF No. 73], the Settlement Administrator has mailed 8,538 notice forms to Class Members. *See* Decl. of Nancy V. Rogers Regarding Notice Administration ¶6 ("Rogers Decl." attached as Ex. A to the Declaration of Omar Jafri). The Notice informed Class Members that Co-Lead Counsel intended to apply for an award of attorneys' fees of up to one-third of the Settlement Amount, plus interest, reimbursement of their out-of-pocket expenses not

---

[1] The Court appointed Pomerantz LLP and Holzer & Holzer LLC as Class Counsel for the Class in this Action. *See* ECF No. 73.

to exceed $115,000, and a reimbursement award to Lead Plaintiff of up to $5,000. As of April 14, 2021, in response to the Notice, neither Co-Lead Counsel nor the Settlement Administrator have received any objections to the proposed fees and expenses or to Plaintiff's proposed reimbursement award. Nor have Co-Lead Counsel or the Settlement Administrator received any objection or request to opt-out of the Settlement.[2] Rogers Decl. ¶10.

A lodestar cross-check further confirms the fairness and reasonableness of Co-Lead Counsel's fee request. Co-Lead Counsel spent a total of approximately 1,112.52 hours of professional time having a market value of approximately $810,196 in prosecuting the claims in this litigation. Decl. of Omar Jafri in Support of Final Approval and Fee Application (the "Jafri Decl.") at ¶66. The requested 33 1/3% award will result in a lodestar multiplier of approximately 1.234, which is on the low end of the range of reasonable multipliers that courts in the Second Circuit routinely award.

In addition, the litigation expenses for which Co-Lead Counsel request reimbursement are reasonable and relate to expenses routinely incurred and reimbursed. Moreover, the requested reimbursement award to Plaintiff is reasonable to reimburse him for the considerable time spent and service that he provided the Class.

For these reasons, and as further set forth below, Co-Lead Counsel and Plaintiff respectfully submit that the Court award attorneys' fees of 33 1/3% of the Settlement Amount, plus interest; reimbursement of their litigation expenses in the amount of $95,393.68; and a reimbursement award of $5,000 to Plaintiff.

## II. THE PERCENTAGE-OF-FUND APPROACH IS APPROPRIATE FOR AWARDING ATTORNEYS' FEES

---

[2] The deadline to file objections and to request exclusion from the Settlement is April 30, 2021. Co-Lead Counsel will file a reply brief updating the Court after this deadline has passed.

### A. The Guiding Principle for Fee Awards

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Second Circuit has also held that attorneys who create a "common fund" are entitled to "a reasonable fee – set by the court – to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *In re Veeco Instruments Inc. Secs. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *8 (S.D.N.Y Nov. 7, 2007); *see also Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *26-27 (S.D.N.Y. Oct. 19, 2005).

### B. The Court Should Award Counsel a Reasonable Percentage of the Fund

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (*quoting Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). The Supreme Court and the Private Securities Litigation Reform Act ("PSLRA") suggest that a reasonable fee in a common-fund case "is based on a percentage of the fund bestowed on the class," *see Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), while courts in the Second Circuit "often and emphatically . . . note[] [that] the percentage of recovery methodology is considered the 'most efficient and logical means' for calculating attorneys' fees," *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 U.S. Dist. LEXIS 119702, at *69 (S.D.N.Y. Nov. 5, 2010) (citation omitted). *See also, e.g., Wal-Mart*, 396

F.3d at 121 (noting the "trend in this Circuit is toward the percentage method," rather than the lodestar method); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (citing 15 U.S.C. §78u-4(a)(6) and noting "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities class actions").

"There are several reasons that courts prefer the percentage method," including, among others, the facts that it: (i) "directly aligns the interests of the class and its counsel because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made"; (ii) is "closely aligned with market practices because it mimics the compensation system actually used by individual clients to compensate their attorneys"; (iii) "provides a powerful incentive for the efficient prosecution and early resolution of litigation"; (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method"; and (v) "preserves judicial resources because it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *41-42 (S.D.N.Y. Sept. 16, 2011) (citations and quotation marks omitted).

In sum, examining the fee as a percentage of the Class's recovery is the most logical and appropriate method to determine the fee's reasonableness, and should be used here.

## III.     THE *GOLDBERGER* FACTORS SUPPORT THE REQUESTED FEE

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted). Consideration of these factors illustrates the reasonableness of the requested fee.

**A.      Co-Lead Counsel's Expended Time and Labor Support the Requested Fee**

The time and effort expended by Co-Lead Counsel in prosecuting the Action and achieving the Settlement supports the requested fee. As set forth in greater detail in the Jafri Decl., Co-Lead Counsel:

- conducted an extensive review of all relevant public filings and other publicly available information;

- consulted with two distinguished experts on clinical development and the FDA drug approval process;

- drafted and argued against the dismissal of the Consolidated Corrected Amended Class Action Complaint (the "AC") (ECF Nos. 31, 38);

- drafted and argued in favor of filing the Second Consolidated Amended Complaint (the "SAC") (ECF Nos. 48, 50), which the Court found cured the deficiencies identified in the AC;

- appeared remotely for Court hearings;

- negotiated a discovery plan and confidentiality protective order;

- filed an unopposed letter motion for class certification;

- engaged in significant discovery, including exchanging initial disclosures, began the process of serving third party discovery internationally, and serving document requests on Nabriva;

- drafted a detailed mediation statement and engaged in a full-day mediation session with an experienced Mediator, which resulted in a Settlement that is highly favorable to the Class;

- negotiated the terms of the Settlement, including the Stipulation and exhibits attached thereto; and

- successfully moved for preliminary approval of the Settlement.

Moreover, the legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Class Members with their Proof of Claim forms, responding to Class Members' inquiries, shepherding the claims process to conclusion, and filing a motion for distribution. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, Case No. 1:12-md-02389, 2015 U.S. Dist. LEXIS 152668, at *27 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Lead Counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The substantial time and effort devoted to this case by Co-Lead Counsel to obtain the $3 million Settlement confirms that the fee request is reasonable.

### B. The Risks of Litigation Support the Requested Fee

"[T]he risk of success [i]s 'perhaps the foremost' factor to be considered" in determining a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54 (*quoting In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM)(MHD), 2014 U.S. Dist. LEXIS 37872, at *75 (S.D.N.Y. Mar. 24, 2014)

("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). Plaintiff believes his case is strong and that he would ultimately prevail. However, he recognizes that there are considerable risks that could result in no recovery, or a lesser recovery, in lieu of a settlement. If this case continued, Plaintiff would need to convince the Court to certify a class for litigation purposes, which Defendants reserved the right to contest at a later stage of the proceedings. Even if the Court granted class certification, risks to maintaining certification would persist: Defendants could petition to appeal the certification order under Rule 23(f) or move for modification or decertification at any point prior to final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 258 (2d Cir. 2020) (reviewing class certification pursuant to Fed. R. Civ. P. 23(f)).

At trial, Plaintiff would face significant risks as to both liability and damages. A jury might find that Defendants did not commit fraud or bore no responsibility for the alleged wrongdoing. Moreover, a jury could find that damages were far lower than Plaintiff calculated. Plaintiff also recognizes that evidence produced in discovery may be susceptible to different interpretations. The jury might not agree that the evidence demonstrates that Defendants made materially false and misleading statements or caused Plaintiff's losses. Plaintiff would also face trial challenges concerning proof of control and damages. And, even if successful at trial, Plaintiff would still face the risk of an unfavorable ruling in a dispositive post-trial motion or a reversal on appeal.

Assuming Plaintiff obtained a favorable final judgment after exhaustion of all appeals, Plaintiff would still face significant risks as to his ability to collect the judgment amount. Insurance coverage could be depleted by defense costs by the time the litigation proceeded to trial and appeal. This coverage might have been Plaintiff's only source of recovery.

Given the various risks in this Action and the strengths and weaknesses of the claims asserted against Defendants, the $3 million Settlement is highly favorable and in the best interests of the Class.

**C.      The Magnitude and Complexities of the Litigation Support the Requested Fee**

In addition to the complexity discussed above, courts recognize that "virtually all securities actions [are] inherently complex." *See, e.g.*, *Guevoura Fund Ltd. v. Sillerman*, Case No. 1:18-cv-09784-CM, 2019 U.S. Dist. LEXIS 218116, at *58 (S.D.N.Y. Dec. 18, 2019); *see also In re Gilat Satellite Networks, Ltd.*, Case No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute."). Moreover, Nabriva is now headquartered in Ireland and much of the relevant conduct occurred in Spain. Thus, in this case "[t]he complexities were especially acute given the case's international dimension, involving . . . foreign witnesses, and foreign-language documents and [anticipated] deposition testimony . . . ." *Christine Asia Co. v. Jack Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, *64 (S.D.N.Y. Oct. 16, 2019); *see also Gilat*, 2007 U.S. Dist. LEXIS 29062 at *36 ("[T]he costs of litigating are anticipated to be 'extremely high,' since both Gilat and the companies with which Gilat did business . . . are located overseas, which will increase the cost and complexity of discovery."). Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable. *See City of Providence v. Aéropostale, Inc.*, Case No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, *46 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

**D.      The Quality of Counsel's Representation Supports the Requested Fee**

The quality of the representation by Co-Lead Counsel is another important factor that supports the reasonableness of the requested fee. Here, "the quality of the representation of [Co-Lead] Counsel is best evidenced by the quality of the result." *Veeco,* 2007 U.S. Dist. LEXIS 85554 at *22; *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The Settlement provides a very favorable result for the Class in light of the serious risks of continued litigation. Had they prevailed on every issue at trial, Co-Lead Counsel, after consulting with experts, estimate that total damages would not exceed $14.1 million, before reduction to adjust for confounding events. Thus, the $3 million Settlement represents approximately 21.3% of the total maximum damages (and could in reality be a much higher percentage of recoverable damages if confounding factors were proved to cause part of the disclosure date drop or the lower end of Plaintiff's damages range - $9.2 million - is recovered). This result is far above "the range of the average recovery in shareholder litigation." *P.R. Gov't Judiciary Emps. Ret. Sys. Admin. v. Marcum, L.L.P.*, No. 15 Civ. 1938 (DAB), 2018 U.S. Dist. LEXIS 20824, at *21 (S.D.N.Y. Feb. 1, 2018) (granting final approval of settlement that was 5.6% to 6.9% of estimated class damages of between $15.94 million and $19.64 million); *see also, e.g.*, *Burns v. Falconstor Software*, No. 10 CV 4572 (ERK), 2014 U.S. Dist. LEXIS 203061, *25-26 (E.D.N.Y. Apr. 10, 2014) (recommending approval of settlement that was 17.4% of estimated class damages of $5 million), *adopted by* 2014 U.S. Dist. LEXIS 203012 (E.D.N.Y. May 8, 2014); *In re Giant Interactive Grp., Inc.*, 279 F.R.D. 151, 162-63 (S.D.N.Y. 2011) (granting final approval of settlement that was 16.5% of estimated class damages of $13 million); *In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, *15 (S.D.N.Y. May 13, 2011) (finding 18.4% recovery of estimated class damages of $5.7 million "far surpasses the 'average settlement amounts in securities fraud class actions . . . [of] 3% to 7% of the class members' estimated

losses.'"); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *20 (S.D.N.Y. July 31, 2008) (granting final approval of settlement that was 10.8% of estimated class damages of $13 million). The percentage recovery also exceeds the 2.1% median settlement value in 2019 for all securities class actions. *See* NERA Economic Consulting, Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review at pp. 18-20 (Feb. 12, 2020).[3]

The quality of representation is also reflected in the experience of Co-Lead Counsel. All specialize in securities class action litigation, and collectively they have several decades of experience. Jafri Decl. ¶60. Courts have also recognized that the quality of the opposition faced by Plaintiff's Counsel should be taken into consideration in assessing the quality of counsel's performance. *See, e.g., Veeco*, 2007 U.S. Dist. LEXIS 85554 at *23 (among factors supporting the award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 LMM, 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work") (internal citations omitted), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by WilmerHale LLP, a well-recognized global defense firm, that vigorously represented the interests of its clients throughout this Action. Jafri Decl. ¶56. Notwithstanding this formidable opposition, Co-Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action enabled Co-Lead Counsel to achieve a favorable Settlement. *Id*. As a result, this factor supports the requested fee.

---

[3] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Gross Settlement Fund based on the number or value of the claims submitted.

**E.     The Requested Fee is a Reasonable Percentage of the Settlement**

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *In re Comverse Tech.*, Case No. 06-CV-1825 (NGG)(RER), 2010 U.S. Dist. LEXIS 63342, at *10 (E.D.N.Y. June 23, 2010) (citation omitted).

The one-third fee requested by Co-Lead Counsel is well within the range of percentage fees that have been awarded in the Second Circuit in comparable securities class actions. *See, e.g.*, *Guevoura Fund*, 2019 U.S. Dist. LEXIS 218116 at *3, *46-47 (awarding one-third of $7.5 million settlement); *Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222, *13 (E.D.N.Y. Aug. 20, 2019) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."); *Gauquie v. Albany Molecular Research*, No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017) (approving award of one-third of $2.868 million settlement); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017) ("[C]ourts routinely award a percentage amounting to approximately 1/3 of a 10 million dollar settlement."); *In re Hi-Crush Partners L.P. Sec. Litig.*, Case No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, *33-34 (S.D.N.Y. Dec. 19, 2014) (characterizing award of one-third of $3.8 million settlement as "routine" and "typical"); *See Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653 (BSJ) (MHD), 2011 U.S. Dist. LEXIS 138543, *1 (S.D.N.Y. Dec. 2, 2011) (noting that attorneys' fee of one-third of the $9 million settlement amount was fair, reasonable and adequate); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, *10 (W.D.N.Y. June 28, 2008) (collecting cases, awarding attorneys' fee of 33% of $2.9 million settlement amount, and finding fee percentage "typical in class action settlements in the Second Circuit").

In sum, Co-Lead Counsel's request for a fee of one-third of the Settlement, plus interest, is well-within the range of fees awarded in the Second Circuit for comparable securities class actions.

**F.      Public Policy Considerations Support the Requested Fee**

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002). In particular, securities class actions like this Action further the objective of the federal securities laws and protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Co-Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702, at *84-85. "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 U.S. LEXIS 64517 at *51-52; *see also Hicks*, 2005 U.S. Dist. LEXIS 24890, at *26. Consequently, public policy considerations favor Co-Lead Counsel's attorneys' fee request. *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at *17 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy supports granting attorneys' fees that are sufficient to

encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

**G.      A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request**

Use of the percentage method does not render lodestar irrelevant.   Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'"   *Wal-Mart*, 396 F.3d at 123 (*quoting Goldberger*, 209 F.3d at 50).   The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate and totaling the amounts for all timekeepers.[4]

Additionally, "a multiplier is typically applied to the lodestar," which "represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Global Crossing*, 225 F.R.D. at 468 (*citing Goldberger*, 209 F.3d at 47).

Here, Co-Lead Counsel collectively devoted a total of 1,112.52 hours to the prosecution of this Action, resulting in a lodestar of $810,196, and a multiplier of 1.234.   Jafri Decl. ¶¶ 66-67. This multiplier is well below the range of multipliers commonly awarded in securities class actions and other complex litigation.  *See, e.g.*, *BioScrip*, 273 F. Supp. 3d at 497 (approving $10.9 million settlement and finding "no question that Lead Counsel's lodestar multiplier of 1.39 is at the lower range of comparable awards in common fund cases"); *China Sunergy*, 2011 U.S. Dist. LEXIS 53007 at*17 (approving $1.05 million settlement, and finding the "lodestar multiplier of 1.41 . . .

---

[4] 5 The Supreme Court and courts in this Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

is on the low end of multipliers found reasonable in the Second Circuit); *Taft v. Ackermans*, Case No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, \*34 (S.D.N.Y. Jan. 31, 2007) (approving 1.44 multiplier regarding $15.75

million settlement as "modest in relation to lodestar multipliers frequently used in this district"). Thus, the lodestar cross-check confirms that the requested fee is reasonable.

**H.      The Reaction of the Settlement Class Supports the Fee Request**

The Class's reaction to the proposed fee request "is a significant factor— perhaps the most significant factor—to be weighed in considering its adequacy" and further supports the attorneys' fee award here.  *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702 at \*46.  The Settlement Administrator mailed 8,538 copies of the Court-approved Notice to Class Members.  Rogers Decl. at ¶6.  The Notice was also made available to the public on the Settlement Administrator's website, and a Summary Notice was published on a national news wire.  *Id*. ¶¶7, 9.  The Notice informed Class Members that Co-Lead Counsel would apply for attorneys' fees of up to one-third of the Settlement, plus interest, and advised Class Members of their right to object to Co-Lead Counsel's fee request.

Where, as here, to date, "no Class Member[s] have exercised their right to opt out and no Class Members have objected to the proposed Settlement," such a reaction "is an exceptionally strong indication of the fairness of the Settlement." *Flag Telecom*, 2010 U.S. Dist. LEXIS 119702 at \*45-46; Rogers Decl. at ¶10; *see also In re Heritage Bond Litig*., No. 02-1475, 2005 U.S. Dist. LEXIS 13627, at \*48-50 (C.D. Cal. June 10, 2005) (concluding "that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,] particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice.").

**IV.     CO-LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY AND SHOULD BE REIMBURSED**

Co-Lead Counsel's expenses are reasonable, consistent with the out-of-pocket expenses that clients typically pay in complex litigation of this type, and were necessarily incurred to achieve the $3 million gross recovery for the Class. Co-Lead Counsel has incurred litigation expenses of $95,393.68, for which they have not been reimbursed to date. *See* Jafri Decl. at ¶69. The amount requested is less than that identified in the Notice, which apprised Class Members that Co-Lead Counsel would seek expenses in an amount not to exceed $115,000.

To date, no Class Member has objected to that request. Rogers Decl. ¶10. These expenses should be reimbursed. Consistent with other jurisdictions, courts in the Second Circuit find that "investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review[] are the type for which 'the paying, arms' length market' reimburses attorneys" and thus "are properly chargeable to the Settlement fund." *Global Crossing*, 225 F.R.D. at 468 (*quoting TBK Partners, Ltd. v. Warshow*, Case No. 77 Civ. 972 (JMC), 1977 U.S. Dist. LEXIS 13597, *3 (S.D.N.Y. Oct. 5, 1977)). Co-Lead Counsel incurred only those expenses necessary to advance the interests of the Class.

The largest expenses were for mediation and for experts retained to address significant matters in this litigation. These expenses are necessary and reasonable in securities fraud litigation. *See, e.g.*, *In re Ashanti Goldfields Sec. Litig.*, No. 00-717, 2005 U.S. Dist. LEXIS 28431, at *15-16 (E.D.N.Y. Nov. 15, 2005) (granting reimbursement of $1,377,825.93 in litigation expenses and noting "the largest expense, totaling over $500,000, was for the services of expert witnesses. . . . This is not unusual in securities litigation actions"). Co-Lead Counsel consulted experts, which were cited extensively in the SAC, to demonstrate that the misleading statements were made with reckless disregard for the truth. *See* ECF No. 43 at p. 3.

Reimbursement is also proper with respect to the other requested expenses. Courts routinely reimburse expenses for "travel including air and ground transportation, hotels, and meals . . . electronic discovery fees" and "other incidental expenses" such as "copying, service of process, [and] filing fees." *Christine Asia*, 2019 U.S. Dist. LEXIS 179836 at *68.

The expenses for which Co-Lead Counsel seek reimbursement were all necessary for the successful prosecution and resolution of the Action on behalf of the Class and are of the type routinely charged to paying clients. *Id*. Therefore, these expenses should be reimbursed out of the Gross Settlement Fund.

## V.    THE AWARD TO PLAINTIFF SHOULD BE APPROVED

Plaintiff also requests that the Court award him $5,000 as reimbursement for the significant time he expended in representing the Class in the prosecution of claims against Defendants. *See* 15 U.S.C. § 78u-4(a)(4). This amount was disclosed in the Notice and, to date, no Class Member has objected to the award amount. Here, Plaintiff took an active role in the litigation by, among other things, reviewing all significant pleadings and briefs in the Action, communicating regularly with Co-Lead Counsel regarding developments in the Action, monitoring the progress of settlement negotiations, and approving the Settlement. *See* Decl. of Jonathan Schaeffer, attached as Exhibit D to the Jafri Decl. Plaintiff estimates that he spent approximately 65 hours on these efforts for the benefit of the Class. Schaeffer Decl. ¶6.

These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *62 (S.D.N.Y. 2009). Accordingly, Co-Lead Counsel respectfully request that the Court grant Plaintiff's request for reimbursement of "reasonable costs and expenses incurred in managing this litigation and representing the Class."

16

*Id.*; *see also Vaccaro v. New Source Energy Partners L.P.*, Case No. 15 CV 8954 (KMW), 2017 U.S. Dist. LEXIS 205785, at *23 (S.D.N.Y. Dec. 14, 2017) (awarding $5,000 to plaintiffs "because they assisted in the litigation communicating with counsel, reviewing pleadings, and monitoring settlement negotiations."); *Gauquie*, No. 14-cv-06637(FB) (SMG) (E.D.N.Y. Oct. 13, 2017) (awarding each plaintiff "$6,000 for reimbursement for their lost time in connection with the prosecution of this action"); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *38 (awarding plaintiff $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *Hicks*, 2005 U.S. Dist. LEXIS 24890 at *30 (reimbursing $7,500 to plaintiff on the basis that "[c]ourts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the Action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place.").

In sum, an award of $5,000 to Plaintiff is appropriate under these circumstances.

## VI. CONCLUSION

Co-Lead Counsel respectfully request that the Court approve the fee and expense application and enter an Order awarding Co-Lead Counsel one-third of the Settlement Amount, plus interest, plus reimbursement of $95,393.68 in litigation expenses, and a reimbursement award of $5,000 to Plaintiff.

Dated: April 14, 2021          */s/ Omar Jafri*

**POMERANTZ LLP**

Patrick V. Dahlstrom
Omar Jafri
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
E-mail: pdahlstrom@pomlaw.com

ojafri@pomlaw.com

-and-

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
E-mail: jalieberman@pomlaw.com
        ahood@pomlaw.com


**Holzer & Holzer LLC**

Marshall P. Dees
210 Ashwood Center Parkway, Suite 1010
Atlanta, GA 30388
Telephone: (770) 392-0090
Email: mdees@holzerlaw.com

*Co-Lead Counsel for Lead Plaintiff
and the Class*