| | |
|---|---|
| LARRY ENRIQUEZ, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NABRIVA THERAPEUTICS PLC, TED SCHROEDER, GARY SENDER, and JENNIFER SCHRANZ, <br><br> Defendants. | **Case No. 1:19-cv-04183-VM** <br><br> CLASS ACTION <br><br> **DECLARATION OF OMAR JAFRI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND A REIMBURSEMENT AWARD TO PLAINTIFF** |

The undersigned hereby declares under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief. Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement filed with the Court on December 7, 2020 (ECF No. 71-1).

1. I, Omar Jafri, am an attorney licensed to practice in the State of Illinois and appearing in this case *pro hac vice*. I am Of Counsel with the firm of Pomerantz LLP, one of the firms appointed Co-Lead Counsel in the above-captioned litigation, and I have represented Lead Plaintiff Jonathan Schaeffer ("Lead Plaintiff") throughout this litigation. I have personal knowledge of the facts asserted herein, and could testify to those facts if called to do so.

2. I submit this Declaration in support of Lead Plaintiff's Motion for Final Approval of the Class Action Settlement, and an Application for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and a Reimbursement Award for Lead Plaintiff (the "Fee Brief"), filed concurrently herewith. The purpose of this Declaration is to set forth the nature of

1

the investigation, legal briefing, litigation and negotiations that led to the settlement with Defendants Nabriva Therapeutics plc ("Nabriva"), Ted Schroeder, Gary Sender, and Jennifer Schranz (collectively, "Defendants"). This Declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Co-Lead Counsel's fee and expense request and Award to Lead Plaintiff are reasonable and should be approved by the Court.

3. The Settlement provides that the Class Members – certain investors in the securities of Nabriva – release the claims advanced in this Action for $3 million.

4. After Lead Plaintiff moved for preliminary approval of the Settlement on December 7, 2020, the Court signed an Order preliminarily approving the Settlement, preliminarily certifying the Class for the purposes of settlement and approving the form and manner of providing Notice to potential Class Members. ECF No. 78.

5. Lead Plaintiff now seeks final approval of the Settlement, as well as an award of attorneys' fees to Co-Lead Counsel of one-third of the Settlement Amount, plus interest, recovery of actual litigation expenses in the amount of $95,393.68 and an award to Lead Plaintiff of $5,000.

6. Attached hereto as Exhibit A is a true and correct copy of the Declaration of Nancy V. Rogers Regarding Notice Administration ("Rogers Decl."), dated April 14, 2021.

7. Attached hereto as Exhibit B is a true and correct copy of the Declaration of Omar Jafri on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), dated April 14, 2021.

8. Attached hereto as Exhibit C is a true and correct copy of the Declaration of Marshall P. Dees on behalf of Holzer & Holzer LLC Concerning Attorneys' Fees and Expenses ("Holzer Fee Decl."), dated April 14, 2021.

9.      Attached hereto as Exhibit D is a true and correct copy of the Declaration of Lead Plaintiff Jonathan Schaeffer, dated April 13, 2021.

**Procedural History**

10.      On May 8, 2019, an initial complaint was filed in this Action.  ECF No. 1.

11.      On May 22, 2019, a second initial complaint was filed in *Manna v. Nabriva Therapeutics Plc et al.*, 19-cv-4713-VM (S.D.N.Y).

12.      On May 24, 2019, the Court consolidated the *Manna* case with this Action.  ECF No. 6.

13.      On July 22, 2019, the Court entered an Order appointing Jonathan Schaeffer to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B)(iii) of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and approved Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") and Holzer & Holzer, LLC ("Holzer" and collectively "Co-Lead Counsel") to serve as Co-Lead Counsel.

14.      Both before and after the Court's July 22, 2019 Order, Co-Lead Counsel carried out an extensive investigation into the factual basis for the claims. Co-Lead counsel reviewed Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Nabriva (or the "Company"), analysts' reports and advisories about the Company, information about the Company's Contract Manufacturing Organizations ("CMO"), and other information readily obtainable on the Internet.

15.      On September 23, 2019, Lead Plaintiff filed his Consolidated Corrected Amended Class Action Complaint (the "AC").  ECF No. 30.  In the AC, Lead Plaintiff alleged that

3

Defendants omitted any discussion of known, material adverse facts regarding Nabriva's primary drug candidate, CONTEPO™, which rendered certain public statements false and misleading.

16. Specifically, the AC alleged that, following an inspection of the CMO's facility in Aranjuez, Spain, which was used to manufacture CONTEPO, the FDA issued a Form 483 letter that identified numerous violations of Current Good Manufacturing Practice ("cGMP"). Lead Plaintiff alleged that the commercial success of CONTEPO was critical for Nabriva, and that the cGMP violations identified in the Form 483 letter were sufficiently serious to create a significant undisclosed risk that the New Drug Application ("NDA") for CONTEPO would be denied. ¶49. Lead Plaintiff further alleged that Defendants omitted any discussion of the Form 483 letter or the specific risks associated with the identified cGMP violations during the Class Period when they spoke positively about the CONTEPO NDA and the FDA regulatory process. ¶¶46-49. As a result, the AC alleged, Defendants made false and misleading statements that caused Nabriva's stock to trade at artificially inflated prices during the Class Period.

17. Lead Plaintiff also alleged that Defendants' statements were revealed to be false and misleading on April 30, 2019 when Defendants announced that the FDA had refused to approve the NDA for CONTEPO because of the cGMP violations the FDA had identified in the Form 483 letter. ¶¶11-12. Lead Plaintiff alleged that he and the members of the proposed Class of Nabriva investors he sought to represent were damaged upon the disclosure and/or materialization of the risks concealed by Defendants' Class Period misrepresentations and omissions.

18. On October 21, 2019, in accordance with the Court's individual practices, Defendants sent Lead Plaintiff a letter outlining their views on why the AC should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 37.

19. After Defendants served their letter, Co-Lead Counsel researched and drafted a letter in opposition to Defendants' request to file a motion to dismiss.

20. On November 11, 2019, Lead Plaintiff filed his letter arguing that the AC stated actionable claims for each statement challenged therein. ECF No. 38.

21. On November 26, 2019, Defendants filed and served a letter setting forth Defendants' arguments in reply. ECF No. 39.

22. On April 28, 2020, the Court entered a Decision and Order granting Defendants' request to dismiss the AC. ECF No. 40. The Court found that Lead Plaintiff pled actionable misstatements, but that the AC's allegations of scienter were insufficient to show that Defendants made the misstatements knowingly or with reckless disregard for the truth. *See* ECF No. 40 at 33, 39-40. The Court directed Lead Plaintiff to show cause why the dismissal should not be with prejudice. ECF No. 40.

23. Co-Lead Counsel closely reviewed the Court's April 28, 2020 Order dismissing the case and retained two experts on clinical development and the FDA drug approval process to aid in responding to the Court's conclusions regarding scienter. Co-Lead Counsel also pursued additional information from the FDA through a Freedom of Information Act ("FOIA") request.

24. On June 8, 2020, Lead Plaintiff responded to the Court's Order to Show Cause by letter and proffered a proposed Second Amended Complaint ("SAC") seeking to cure the deficiencies the Court previously identified in the AC. ECF No. 43. Co-Lead Counsel consulted both experts and cited them extensively in the SAC to demonstrate the seriousness of the cGMP violations identified in the Form 483 letter - and the difficulty Nabriva faced in attempting to cure the violations - before its April 30, 2019 Prescription Drug User Fee Act goal date (the "PDUFA date"). Based upon a review of the Form 483 letter, an Establishment Inspection Report ("EIR")

written by the FDA inspector, who examined the facility where CONTEPO was produced, and communications between the CMO and the FDA from January 2019 to November 2019, both experts concluded that the information in those communications regarding the pervasive cGMP violations at the CMO's facility were so serious that they would threaten the health and safety of patients if not remediated and would result in a significant delay of any effort to seek approval for CONTEPO well beyond the PDUFA goal date. Moreover, Lead Plaintiff alleged that the EIR showed that an FDA inspector told a representative of the CMO during the inspection of the facility in Spain that the cGMP violations were so serious that the FDA may consider them violations of the Food, Drug and Cosmetic Act, which would warrant regulatory actions such as a Warning letter, an Import Alert and/or a decision to withhold approval for any drug application pending before the FDA.

25. Co-Lead Counsel also utilized documents obtained in response to the FOIA request to draft allegations in the SAC showing that the cGMP violations identified in the Form 483 letter were pervasive and stretched back many years. *See* ECF No. 40 at p. 41 (noting that "a pattern of feedback reflecting the same unresolved concerns might demonstrates defendants' failure to mention the form was unreasonable").

26. On June 9, 2020, the Court directed Defendants to respond to Lead Plaintiff's June 8, 2020 letter to the Court (ECF No. 44). Defendants responded on June 22, 2020. ECF No. 48.

27. On June 23, 2020, the Court entered an Order, which found that the SAC adequately alleged scienter, directed Lead Plaintiff to file the SAC, and ruled that any motion to dismiss the SAC would be denied without prejudice. ECF No. 49.

28. On June 24, 2020, Lead Plaintiff filed the SAC. ECF No. 50. On July 8, 2020, Defendants filed their Answer to the SAC. ECF No. 54.

29. Thereafter, Co-Lead Counsel drafted and served initial disclosures on July 30, 2020. Co-Lead Counsel also engaged in negotiations with counsel for Defendants regarding a case schedule, but the Parties were unable to agree on all aspects of the schedule. Co-Lead Counsel then drafted and submitted Lead Plaintiff's positions to the Court in the Proposed Case Management Plan, which was filed with the Court on July 31, 2020. ECF No. 57.

30. The Court held an initial case management conference via telephone on August 7, 2020. At the conference, the Court referred the matter to Magistrate Judge Gabriel W. Gorenstein for general pretrial and settlement purposes. ECF No. 59.

31. Magistrate Judge Gorenstein directed the Parties to submit a proposed schedule in advance of a scheduling conference set for August 21, 2020. ECF No. 60. Co-Lead Counsel prepared Lead Plaintiff's portion of the proposed schedule.

32. On August 19, 2020, the Parties submitted a [proposed] Scheduling Order in the form directed by Magistrate Judge Gorenstein. ECF No. 61.

33. At the same time, the Parties also were negotiating a limited protective order governing the confidential treatment of Defendants' insurance coverage information, which was provided to Co-Lead Counsel as part of Defendants' initial disclosures. The Parties then submitted a Joint Stipulation governing the confidentiality of the insurance information on August 20, 2020. ECF No. 62.

34. On August 21, 2020, Co-Lead Counsel appeared before Magistrate Judge Gorenstein for a scheduling conference. Judge Gorenstein thereafter entered a scheduling order which set deadlines for initial document requests and initial interrogatories, as well as a schedule for class certification briefing, a fact discovery deadline, and an expert discovery schedule, among other things. ECF No. 63.

35.     After the scheduling order's entry, Co-Lead Counsel continued negotiations with counsel for Defendants on a proposed protective order, which was submitted for Court approval on September 4, 2020.  *See* ECF No. 66.

36.     Co-Lead Counsel drafted and responded to written discovery requests in this Action in accordance with the scheduling order. Plaintiff' First Set of Document Requests to All Defendants were served on September 1, 2020.  Plaintiff's First Set of Interrogatories to Nabriva were served on September 21, 2020.  On September 30, 2020, Co-Lead Counsel served Plaintiff's Responses and Objections to Defendants' First Request to Plaintiff for Production of Documents. On October 18, 2020, Co-Lead Counsel served Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories.

37.     Co-Lead Counsel also researched and took preliminary steps to obtain discovery from the CMO in Spain pursuant to the *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* (HCCH 1970 Evidence Convention).  Co-Lead Counsel consulted with Spanish attorneys familiar with the process and requested and received information regarding the identity of the CMO's legal counsel who would be handling the matter on its behalf.

38.     While engaged in the discovery process, Co-Lead Counsel drafted and served a pre-motion letter, after extensive consultation with an econometric expert, seeking class certification on September 30, 2020, and requested that the unopposed letter be deemed a motion in accordance with the Court's local rules.  ECF No. 67.

39.     During this time, the Parties also engaged in preliminary negotiations regarding a potential settlement of the Action.  The Parties ultimately agreed to participate in a non-binding mediation and retained Michelle Yoshida, Esq. of Phillips ADR to facilitate the process.

**Settlement Negotiations and Terms**

40. The Parties scheduled the mediation with Ms. Yoshida for October 21, 2020.

41. Co-Lead Counsel drafted and served a mediation statement on October 7, 2020.

42. After consulting with damages experts, Co-Lead Counsel participated in a full-day mediation session before Ms. Yoshida on October 21, 2020. At the end of the day, Ms. Yoshida circulated a proposal to the Parties to settle the Action for $3,000,000, which the Parties accepted. The Parties executed a Term Sheet reflecting the agreement on October 29, 2020.

43. The Parties notified the Court of their agreement to settle the Action and requested that the Action be stayed for 30 days to allow Lead Plaintiff to file a motion for preliminary approval of the settlement, as required by the PSLRA. *See* ECF No. 68.

44. On December 7, 2020, after further negotiations, the Parties executed a Stipulation of Settlement. *See* ECF No. 71-1. The same day, Lead Plaintiff filed his Unopposed Motion for Preliminary Approval of Class Action Settlement together with all its exhibits. ECF No. 69.

45. The Settlement provides for a payment of $3 million in cash to pay the Class's claims. If the Court grants final approval of the Settlement, Lead Plaintiff, on behalf of the Class Members, will forever release their claims against the Defendants that were alleged or could have been alleged in this Action. The Settlement Amount of $3 million is approximately 21.3% of the $14.1 million maximum estimated damages in this Action.

**Preliminary Approval and Response from the Settlement Class**

46. On January 28, 2021, the Court granted Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement and entered the Preliminary Approval Order. ECF No. 73.

47. Pursuant to the Preliminary Approval Order, requests for exclusion and objections to the Settlement must be received by April 30, 2021. As of April 14, 2021, there have not been any requests for exclusion. Rogers Decl. ¶10. Co-Lead Counsel has received no other requests

for exclusions. As of this writing, Co-Lead Counsel has not received any objections to any aspect of the Settlement.

48. The Notice sent to potential Class Members describes the Plan of Allocation. Rogers Decl., Ex. A at 3-4. Co-Lead Counsel formulated the Plan of Allocation with the help of the Settlement Administrator to fairly and reasonably distribute the Net Settlement Fund to Class Members consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* losses from sales made prior to revelation of the truth. The Plan of Allocation establishes a formula which determines Authorized Claimants' recognized losses based on the foregoing application of the securities laws and calculates Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, the Gross Settlement Fund, less: (i) attorneys' fees and expenses; (ii) taxes and tax expenses; (iii) Notice and Administration Expenses; and (iv) a reimbursement award to Lead Plaintiff, if any). Rogers Decl., Ex. A at 3-4.

**Complexity, Expense, and Likely Duration of the Litigation**

49. While this Action was pending, Lead Plaintiff: (1) investigated the claims in this Action to plead two amended complaints, which involved hiring multiple experts; (2) successfully opposed Defendants' efforts to have the case dismissed; (3) began taking discovery; (4) moved to have the class certified; and (5) negotiated the Settlement. Thus, before entering into the Settlement, Lead Plaintiff and Co-Lead Counsel understood the strengths and weaknesses of their case.

50. Completing discovery and hiring additional experts would have imposed substantial costs, and summary judgment and trial would have been expensive and risky. Not only would the Class risk recovering nothing at all or less than the Settlement, but because the loser at

trial would almost certainly appeal, the Class could not collect any judgment until the appeals were resolved.

**Risks of Continued Litigation**

51.     Lead Plaintiff and the Class face various risks that continued litigation would result in lesser or no recovery. The Court might grant summary judgment or deny class certification, or the jury might find against Lead Plaintiff at trial.  Even a favorable jury verdict might be reversed on appeal.

52.     At many junctures, securities class action plaintiffs must prove esoteric concepts to recover on their claims.  For example, to certify a class, plaintiffs must prove with expert testimony that the shares trade on an efficient market, a concept most jurors will never have heard of.  To prove damages, plaintiffs must put a price figure not only on the information that was allegedly fraudulently withheld but also on all other confounding information released at the same time.  To prove scienter, plaintiffs must ask the jury to peer into the mind of the defendants to determine that when they made public statements, they were doing so with an eye towards defrauding investors – even as these defendants steadfastly maintain their innocence on the stand in front of the jury.

53.     Moreover, proving damages in a securities case is always difficult and invariably requires intricate expert testimony.  Defendants would likely oppose any expert Lead Plaintiff retained with an expert expressing the opposite view.

54.     Further, additional defense costs incurred through trial and appeal of this Action, if incurred, would likely erode the limited amount of insurance available to Defendants, and reduce Lead Plaintiff's source of recovery.

**The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel**

55.     Co-Lead Counsel are experienced in prosecuting class actions and have successfully prosecuted securities class actions in courts throughout the country, including in the Southern District of New York.   Co-Lead Counsel have extensive experience in the specialized field of shareholder securities litigation.   Co-Lead Counsel leveraged their experience and resources to assess the merits and value of the case and negotiate the Settlement.

56.     Defendants are represented by highly capable, prominent counsel, WilmerHale LLP.  Notwithstanding this opposition, Co-Lead Counsel were able to develop a case that was sufficiently strong to persuade Defendants to settle it on terms that are favorable to the Class.

**Co-Lead Counsel's Fee and Expense-Reimbursement Request, and Lead Plaintiff's Reimbursement Award are Justified**

57.     As compensation for their efforts, Co-Lead Counsel are applying for an award of attorneys' fees in the amount of 33 1/3 percent of the Settlement Amount, plus interest, and reimbursement of $95,393.68 in expenses reasonably incurred in the prosecution and settlement of the Action.  *See* Fee Brief filed herewith.  Lead Plaintiff and Co-Lead Counsel have prosecuted this case for two years without any compensation whatsoever, and incurred tens of thousands of dollars in expenses without any guarantee of success.

58.     The 33 1/3 percent fee request is routinely awarded by courts in the Second Circuit, as further detailed and discussed in the Fee Brief.

59.     Lead Plaintiff, through the vigorous efforts of Co-Lead Counsel, engaged in extensive factual investigation and litigation of the claims alleged in the SAC.  By the time the Settlement was reached, Co-Lead Counsel had:

- conducted an extensive review of all relevant public filings and other publicly available information;

- consulted with two distinguished experts on clinical development and the FDA drug approval process;

- drafted and argued against the dismissal of the AC (ECF Nos. 31, 38);

- drafted and argued in favor of filing the SAC (ECF Nos. 48, 50), which the Court found cured the deficiencies identified in the AC;

- appeared remotely for Court hearings;

- negotiated a discovery plan and confidentiality protective order;

- engaged in significant discovery, including exchanging initial disclosures, initial interrogatories, document requests, and began the process of serving third party discovery internationally;

- moved for Class Certification;

- drafted a detailed mediation statement; engaged in a full-day mediation session with an experienced Mediator, which resulted in a Settlement that is highly favorable to the Class;

- negotiated the terms of the Settlement, including the Stipulation and exhibits attached thereto; and

- successfully moved for preliminary approval of the Settlement.

60. The expertise and experience of Co-Lead Counsel is also an important factor to be weighed in assessing a fair fee. Co-Lead Counsel are comprised of experienced and skilled practitioners in the securities litigation field. Co-Lead Counsel have achieved significant settlements in securities class actions, as well as being counsel of record in cases establishing important precedents that enable litigation such as this to be successfully prosecuted.

61.     Co-Lead Counsel prosecuted the Action vigorously, expending substantial time and resources without any assurance of obtaining any compensation for their efforts. Co-Lead Counsel have already devoted a significant amount of time to this case, and fully expect to devote more time in connection with the future administration and distribution of the Settlement.

**Litigation Risks Support the Fee Award**

62.     Co-Lead Counsel undertook representation of Lead Plaintiff and the Class on a wholly contingent basis. From the outset, Co-Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require if the Action proved unsuccessful. In undertaking that responsibility, Co-Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Co-Lead Counsel was greater than those for a firm paid on an ongoing basis.

63.     As described above, this Action involved serious legal and practical hurdles that could have resulted in no recovery at all. Continued litigation would have entailed significant risks to the Class, as the Action could be derailed in any number of ways before a final judgment was entered (and withstood possible appeal) in favor of a yet-to-be-certified Class of Nabriva investors.

**The Reaction of the Settlement Class Supports the Requested Fee, Expenses, and Reimbursement Award to Lead Plaintiff**

64.     8,538 copies of the Notice have been mailed to potential Class Members. Rogers Decl. at ¶6. The Notice advised Settlement Class Members that Co-Lead Counsel would apply for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Amount, plus interest, and reimbursement of litigation expenses incurred not to exceed $115,000.00.

14

65. As of the time of this filing, there have been no objections to the proposed fee application. Additionally, as of the time of this filing, no requests for exclusion have been received in relation to the Notice of Pendency and Settlement of Class Action mailing, and no requests for exclusion have been received from the Settlement Administrator. Rogers Decl. at ¶10.

**The Fee Request is Also Justified Under the Lodestar/Multiplier Approach**

66. Altogether, Co-Lead Counsel dedicated 1,112.52 hours to prosecuting this Action. These hours were compiled from contemporaneous time records maintained by each attorney. Applying Co-Lead Counsel's normal, hourly rates, which are consistent with those charged by similarly skilled firms in their respective geographic areas, to the hours expended in this Action yields a lodestar amount of $810,196. *See* Pomerantz Fee Decl. at ¶5; Holzer Fee Decl. at ¶5.

67. The fee requested represents a lodestar multiplier of approximately 1.234. As reflected in the Notice, Co-Lead Counsel have agreed to apply for fees cumulatively not to exceed 33 1/3% of the Settlement Amount, plus interest.

68. Co-Lead Counsel's work will not end with the Court's approval of the Settlement. Co-Lead Counsel will necessarily spend more time and resources assisting Class Members with their Claim Forms, overseeing the claims process, and responding to Class Members' inquiries.

**Request for Reimbursement of Expenses**

69. Co-Lead Counsel also request reimbursement of $95,393.68 in expenses, consisting of $90,710.32 in expenses of Pomerantz LLP (see Pomerantz Fee Decl. ¶6 attached hereto), and $4,683.36 in expenses of Holzer & Holzer LLC (see Holzer Fee Decl. ¶6, attached hereto). The expenses requested are reflected in the records of the respective counsel, prepared in the normal course of business, and are an accurate record of the expenses incurred. The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action. The expenses were incurred largely in conjunction with experts, mediation, necessary travel, private

15

investigation, and computer-based legal research. These expenses were all incurred for the benefit of the Class, and, as explained in the Fee Brief submitted herewith, are of the type generally billed to, and reimbursed by, individual clients in standard billing arrangements.

**The Requested Reimbursement Award to Lead Plaintiff Is Justified**

70. Lead Plaintiff seeks reimbursement, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), of his reasonable expenses and time incurred in connection with the Action in the amount of $5,000. The amount of time and effort devoted to this Action by Lead Plaintiff, who reviewed the complaints and numerous other pleadings in this Action, participated in responding to discovery, regularly communicated with Co-Lead Counsel to stay apprised of developments in the case, and participated in settlement discussions with Co-Lead Counsel, is detailed in the accompanying Lead Plaintiff declaration. *See* Ex. D.

**Conclusion**

71. In view of the significant recovery to the Class, the substantial risks of this litigation, the substantial efforts of Co-Lead Counsel, the quality of the work performed, the contingent nature of the fee, and the standing and experience of Co-Lead Counsel, Co-Lead Counsel respectfully submits that: the Settlement should be approved as fair, reasonable, and adequate; the Plan of Allocation should be approved as fair and reasonable; a fee in the amount of 33 1/3% of the Settlement Amount, plus interest, should be awarded to Co-Lead Counsel; litigation expenses of $95,393.68 should be reimbursed in full; and Lead Plaintiff should be awarded $5,000.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 14, 2021.

/s/ Omar Jafri

Omar Jafri, Esq.

16